[No. F063534. Fifth Dist. Apr. 26, 2012.]

CONSOLIDATED IRRIGATION DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
CITY OF SELMA et al., Real Parties in Interest.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts VII. and VIII. of the Discussion.

---

## COUNSEL

Law Offices of P. Scott Browne, P. Scott Browne and Marsha A. Burch for Petitioner.

No appearance for Respondent.

Costanzo & Associates, Neal E. Costanzo; McCormick, Barstow, Sheppard, Wayte & Carruth, Jeffrey M. Reid and Christopher S. Hall for Real Parties in Interest.

---

## OPINION

**DAWSON, J.**—Consolidated Irrigation District (CID) petitions for a writ of mandate after the respondent superior court denied CID's motion to conduct limited discovery, a motion to augment the record of proceedings,[1] and a petition for writ of mandate under the California Public Records Act (Public Records Act) (Gov. Code, § 6250 et seq.).[2] The superior court's orders were issued in a proceeding brought under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.)[3] that challenged the City of Selma's (City) approval of an environmental impact report (EIR) for Selma Development Partners, LLC's (Developer) proposed Rockwell Pond Commercial Project.

---

[1] In this opinion, the statutory term "record of proceedings," "ROP," and the commonly used term "administrative record" mean the same thing.

[2] Government Code section 6259, subdivision (c) provides that an order of the trial court supporting the decision of a public official refusing disclosure of material requested under the Public Records Act "is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ."

[3] All further statutory references are to the Public Resources Code unless otherwise indicated.

We issued an order to show cause and stayed further proceedings in the superior court. The petition raised novel legal questions regarding the proper interpretation and application of section 21167.6, subdivision (e). We reach the following conclusions.

First, tape recordings of public agency hearings qualify as "other written materials" for purposes of section 21167.6, subdivision (e)(10), and therefore, copies of tape recordings should have been included in the record of proceedings that City lodged with the trial court.

Second, the term "submitted" as used in the statutory phrase "written evidence . . . submitted" (§ 21167.6, subd. (e)(7)) means made readily available. When applied in this case, "written evidence . . . submitted" includes (1) documents named in a comment letter along with a specific Web page address containing that document and (2) documents previously delivered to the public agency where the commenter's letter (a) named the documents, (b) stated the documents were provided previously in connection with another project, (c) offered to provide another hard copy upon the agency's request, and (d) requested the document be included in the record of proceedings. Documents that are simply named in a comment letter or named along with a reference to a general Web site (such as "www.krcd.org") have not been made readily available to the public agency and, therefore, are not "written evidence . . . submitted" under section 21167.6, subdivision (e)(7).

Third, the trial court did not err when it determined that the "public agency's files on the project" (§ 21167.6, subd. (e)(10)) did not include files maintained by subconsultants. In this case, City retained a primary consultant to prepare the EIR and the primary consultant hired subconsultants to prepare reports, studies, or certain sections of the EIR. The record fails to show City had any ownership or other rights in the files of the subconsultants.

Fourth, a March 2010 letter to City from the County of Fresno concerning the project should have been included in the record of proceedings pursuant to section 21167.6, subdivision (e)(7), which covers all written correspondence submitted to the public agency concerning the project.

Fifth, the record sufficiently supports the implied findings of fact underlying the trial court's denial of CID's petition under the Public Records Act. Specifically, the record supports the findings that files maintained by subconsultants who worked on preparing portions of the EIR were not subject to disclosure as public records "in the possession of [City]" (Gov. Code, § 6253, subd. (c)).

Based on the foregoing, we will reverse the trial court's denial of the motion to augment and grant CID's petition for writ of mandate. We will uphold the trial court's denial of the discovery motion and the petition under the Public Records Act.

## FACTS AND PROCEEDINGS

In September 2009, City issued a notice of availability concerning the completion of a draft EIR for the proposed Rockwell Pond Commercial Project, a development consisting of a 971,000-square-foot commercial center located on a 94-acre parcel on the north side of Floral Avenue west of State Route 99. The notice stated that the project files would be maintained at the community development department, gave the department's address and phone number, and stated the files could be viewed by appointment during regular business hours.

In December 2009, City's planning commission held a special meeting to consider matters involving the proposed project. In January 2010, the city council held a public hearing to consider entitlements for the proposed project.

On March 1, 2010, the city council approved the Rockwell Pond Commercial Project. In addition, the city council unanimously adopted resolution No. 2010-8R, which certified that the final EIR for the project (1) was completed in compliance with CEQA, (2) was presented to the city council and reviewed and considered by it prior to deciding to approve the project, and (3) reflected the city council's "independent judgment and analysis based on substantial evidence in the whole record regarding the environmental issues related to the Project."[4] Resolution No. 2010-8R included a finding stating, "the documents and other materials that constitute the record of proceedings . . . are located at 1710 Tucker Street, Selma, California. The Custodian of these documents is Melanie A. Carter, City Clerk."[5]

On March 30, 2010, CID sent a letter to City and Developer notifying them of its intention to file a CEQA petition challenging the approval of the

---

[4] These enumerated items mirror the requirements for certification of a final EIR set forth in Guidelines section 15090, subdivision (a)(1) through (3). (See § 21082.1, subd. (c)(3) [lead agency shall find EIR reflects its independent judgment].) "Guidelines" refers to the regulations that implement CEQA and are codified in California Code of Regulations, title 14, section 15000 et seq.

[5] This finding is required by section 21081.6, subdivision (a)(2), which states: "The lead agency shall specify the location and custodian of the documents or other material which constitute the record of proceedings upon which its decision is based." (See Guidelines, § 15091, subd. (e) [same].)

project. Also that day, CID sent City a separate letter containing a Public Records Act request "for access to certain public records in the possession of [City] in order to prepare the administrative record for litigation."

In early April 2010, CID filed a lawsuit alleging that City violated CEQA when it approved the Rockwell Pond Commercial Project and certified the final EIR.[6] CID also filed a notice of CID's election to prepare the record of proceedings pursuant to section 21167.6, subdivision (b)(2).

On April 12, 2010, an attorney representing City sent a letter to CID responding to CID's attempt to obtain documents under the Public Records Act. The letter stated, among other things, that CID was a public agency and not a "person" entitled to request another local agency to provide documents under the Public Records Act. City provided no documents in response to the request.

CID alleges that after receipt of the letter from City's attorney, City indicated it would put together a group of documents concerning the project, and the parties agreed that the Public Records Act request would be deferred pending CID's receipt of the documents from City. City alleges that no such agreement was ever made.

During May and June, the attorneys argued about the documents. In an e-mail dated June 29, 2010, the attorney representing City stated, "I have what I believe may be all the necessary records to prepare an administrative record." The attorney offered to stipulate "that the record would be prepared jointly according to the applicable provision of CEQA." CID's attorney responded in an e-mail dated June 30, 2010, stating he would go along with the proposal tentatively and requested a short written stipulation to avoid a misunderstanding regarding the contents of the agreement.

In an e-mail dated August 5, 2010, the attorney representing City informed the attorney representing CID that City and Developer were compiling documents to generate a proposed record and that the proposed record would be provided to CID's attorney for review. The e-mail also stated that, if CID's attorneys agreed nothing else was required to be included, the city clerk would certify the record.

On August 13, 2010, counsel for Developer sent a pro forma index for the proposed administrative record to the attorneys representing CID. The parties stipulated to an order extending the time for preparation and certification of

---

[6] The operative pleading in this lawsuit is the first amended petition for writ of mandate, which CID filed on May 12, 2010.

the administrative record to September 17, 2010. On August 25, 2010, CID's attorneys received from counsel for Developer a digital video disc (DVD) containing the scanned documents that constituted the proposed administrative record. After reviewing the index, CID's attorneys sent counsel for Developer a September 10, 2010, letter stating that the index required revision to comply with California Rules of Court, rule 3.1365(b), and an entire category of documents—internal agency communications—appeared to be missing from the index.

During September, counsel for Developer worked on revising the index. On October 12, 2010, counsel for Developer sent CID's attorney a DVD containing the scanned, Bates-stamped images of the proposed administrative record. A week letter, CID's attorney responded with a letter requesting that the administrative record include three transcripts and 39 enumerated documents (some of which were available on the Internet) and posing a number of questions about e-mails. In a letter dated October 26, 2010, counsel for Developer rejected most of the requests for the inclusion of additional materials in the administrative record, many on the ground that the additional materials had not been consulted or utilized in the preparation of the final EIR.

On November 9, 2010, City filed a "Certification of City Clerk of Administrative Record." In that document, Melanie Carter declared that she was the city clerk and that the administrative record lodged with the court consisted of "true and correct copies of the documents on file in my office relating to the proceedings before the City of Selma and the City Council of the City of Selma and Selma Planning Commission resulting in approval of . . . the Rockwell Pond Commercial Development." In addition, Carter's certification of the administrative record stated: "I certify that the transcripts in the record are true and correct copies of the transcripts of the oral proceedings provided to the City of Selma. I certify that each and all of the remaining documents included in the Administrative Record are true and correct copies of the originals of said documents on file in my office." The final sentence of the certification stated: "I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct."

CID's attorneys responded with a letter to counsel for City and for Developer (1) asserting City had abandoned its agreement to cooperate in the preparation of the administrative record and (2) renewing CID's request under the Public Records Act. Additional letters were exchanged by the attorneys without producing an agreement.

On December 17, 2010, CID filed a motion for leave to conduct limited discovery. CID asserted that at the time the motion was filed (1) the

administrative record prepared by City and lodged unilaterally with the superior court included almost no internal agency communications and (2) City had refused to produce any original correspondence, as well as technical data and documents used in the preparation of the EIR. CID also filed a motion to augment the administrative record of proceedings on the ground that documents required to be included by section 21167.6, subdivision (e) had been omitted.

Also on December 17, 2010, CID filed a petition for writ of mandate under the Public Records Act seeking an order requiring City to provide CID with access to City's project files, including the files held by City's consultants. The parties dispute the causes for the delay, but the hearing on the two motions and Public Records Act petition was set for March 22, 2011.

On March 9, 2011, counsel for Developer provided additional materials to CID's attorneys. They disagree on the characterization of these documents. CID describes them as an augmented administrative record. Developer describes the material as a submittal in support of a proposed stipulation among the parties to augment the administrative record.

On March 22, 2011, at the hearing on the motions and petition for writ of mandate under the Public Records Act, the trial court continued the hearing and directed CID's attorneys to review the documents provided on March 9, 2011.

In May 2011, the parties filed supplemental briefing and appendices that attempted to list the status of particular documents and the position of the parties with respect to those documents. The trial court held a hearing on May 27, 2011, and a further and final hearing on July 8, 2011. At the July hearing, the court took the matter under submission.

On September 14, 2011, the trial court issued an order denying CID's (1) motion for leave to conduct limited discovery, (2) motion to augment the record of proceedings, and (3) petition for writ of mandate under the Public Records Act. The motion to augment was denied "with the exception that all documents agreed upon by the parties to be included in an augmented record during the course of these proceedings to date are approved by the court and shall be included in the [administrative record]." With that inclusion of documents, the court "deem[ed] the augmented [administrative record] to be complete and ripe for briefing and review by the court."

On October 24, 2011, CID filed its petition for writ of mandate with this court. On November 3, 2011, this court issued an order to show cause.

## DISCUSSION

I. *Public Records Act Request for Access to Subconsultant Files*

 A. *Provisions of Public Records Act*

■ The Public Records Act was enacted "for the purpose of increasing freedom of information by giving members of the public access to information in the possession of public agencies." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 425 [121 Cal.Rptr.2d 844, 49 P.3d 194].) The Legislature expressly declared "that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 6250.) To implement this policy, Government Code section 6253 provides persons with the right to inspect public records and the right to request copies upon payment of copying costs. (*Id.*, subds. (a), (b).) In addition, Government Code section 6253, subdivision (c) provides that an "agency, upon a request for a copy of records, shall, within 10 days from receipt of the request, determine whether the request, in whole or in part, seeks copies of disclosable public records *in the possession of the agency* and shall promptly notify the person making the request of the determination and the reasons therefor." (Italics added.) The time limit may be extended if there is a "need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." (Gov. Code, § 6253, subd. (c)(1).)

For purposes of applying the foregoing provisions, the term "public records" includes "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency." (Gov. Code, § 6252, subd. (e).)

 B. *Standard of Review*

An order of the trial court under the Public Records Act is reviewable immediately by petition to the appellate court for issuance of an extraordinary writ. (Gov. Code, § 6259, subd. (c); *California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 824 [108 Cal.Rptr.2d 870].)

The standard of review applicable to a trial court's orders under the Public Records Act has been addressed by the California Supreme Court. (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1336 [283 Cal.Rptr. 893, 813 P.2d 240].) The court stated, "as we have in the past, we shall conduct an independent review of the trial court's ruling; factual findings made by the trial court will be . upheld if based on substantial evidence." (*Ibid.*) This

statement of the standard of review has been expanded to include implied factual findings. The Court of Appeal stated: "We review de novo the trial court's ruling, but defer to its determination of any express or implied factual findings. [Citation.]" (*Rackauckas v. Superior Court* (2002) 104 Cal.App.4th 169, 173–174 [128 Cal.Rptr.2d 234].) The de novo appellate review referenced in this quote applies to (1) interpretations of the Public Records Act and (2) the application of that interpretation to undisputed facts. (*BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 750 [49 Cal.Rptr.3d 519].)

### C. *Contentions of the Parties*

City contends that CID's request under the Public Records Act suffers from a number of procedural defects and, furthermore, the trial court's denial of CID's Public Records Act petition is supported by substantial evidence.

CID's reply to City's return asserts that the only issue presented in its writ regarding the Public Records Act is "whether the files of consultants retained to prepare an EIR for the City are 'public records' that the City has a duty to seek [and] obtain to respond to a public records request." CID contends this is an issue regarding the construction and application of a statute to undisputed facts, which is an issue of law subject to independent review by appellate courts.

### D. *Analysis*

CID's contentions imply that it need only demonstrate that the files of the consultants were "public records" and it is entitled to have City produce those files. This implication is not accurate because the duty set forth in Government Code section 6253, subdivision (c) pertains to "disclosable public records in the possession of the agency." Thus, to be successful, CID must establish that the files (1) qualify as "public records" and (2) were in the possession of City.

In this case, there were two levels of consultants. The primary consultant hired by City was Land Use Associates and its principal, Bruce O'Neal. Land Use Associates retained other consultants to address particular environmental topics. For example, Peters Engineering Group was hired as a traffic consultant and prepared a traffic impact study. For purposes of this opinion, we will adopt CID's convention and refer to the second level of consultants as subconsultants.

CID's Public Records Act request initially concerned the files of both the primary consultant and the subconsultants. The issue concerning the primary consultant's files has been resolved because CID has been given access to

O'Neal's files at Land Use Associates.[7] Consequently, the questions concerning the application of the Public Records Act in this case are limited to the subconsultants' files.

The parties dispute whether the files of the subconsultants are "public records" under Government Code section 6252, subdivision (e) and whether the files of the subconsultants were "in the possession of the agency" for purposes of Government Code section 6253, subdivision (c). The trial court's written order did not expressly resolve these issues or otherwise provide a rationale for its decision. It simply stated that CID's petition for writ of mandate under the Public Records Act was denied.

■ The first issue we will address is whether the files of the subconsultants were "in the possession of the agency" for purposes of Government Code section 6253, subdivision (c). We interpret "possession" to mean both actual and constructive possession. (*Batt v. City and County of San Francisco* (2010) 184 Cal.App.4th 163, 172 [109 Cal.Rptr.3d 129].) For purposes of this statute, we conclude an agency has constructive possession of records if it has the right to control the records, either directly or through another person. (See *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417 [125 Cal.Rptr.3d 903] [doctrine of constructive possession for crime of felon in possession of a firearm].)

In applying this statutory interpretation to this case, we will consider whether the record contains substantial evidence to support a finding that City did not control or actually possess the files of the subconsultants. If substantial evidence supports such a finding, we will conclude that the trial court made that implied finding and uphold its denial of the Public Records Act petition. (See *Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal.App.4th 440, 467 [125 Cal.Rptr.3d 655] [appellate court deferred to trial court's implied factual findings supported by substantial evidence].)

CID asserts that City has the right to control the subconsultants' files based on a provision in the contract between City and the primary consultant. Paragraph No. 10 of the agreement between City and Land Use Associates

---

[7] CID's reply asserts that "under threat of the pending [Public Records Act] petition, the City persuaded Mr. O'Neal to provide his files to [CID]. It is entirely likely that the other consultants would also provide their files upon request." The question whether documents held by an agency's EIR consultant are subject to a Public Records Act request was litigated in *Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379 [84 Cal.Rptr.3d 754]. That appeal concerned the attorney fees awarded after the trial court adopted the special master's report that recommended, among other things, that certain documents in the consultants' possession were subject to the Public Records Act request. (*Bernardi*, at p. 1387.) The case did not involve the files of subconsultants.

states that City owns "all finished or unfinished documents, data, studies, surveys, drawings, maps, models, photographs, computer discs, and reports prepared by the Contractor under this Agreement . . . ." CID argues that the phrase "prepared by the Contractor," when considered in the overall context of the contract, includes all of the work prepared by the subconsultants on behalf of Land Use Associates.

We reject CID's interpretation of the contract because it conflicts with the definition of "Contractor" set forth in the contract. The opening sentence of the contract defines Land Use Associates as "Contractor." When this explicit definition is plugged into paragraph No. 10 of the agreement, that paragraph unambiguously refers to documents, data, and reports prepared by Land Use Associates. We cannot extend that provision to include materials prepared by subconsultants without rewriting the parties' agreement. Consequently, we conclude that paragraph No. 10 and the remainder of the contract do not provide evidence demonstrating that City's ownership rights include materials in the subconsultants' files.

CID argues that there is a possibility the subconsultants might provide their files to City upon request. While we recognize that this possibility exists, the mere possibility of control does not establish City has constructive possession of the files.

The contract between City and Land Use Associates supports the implied finding that City lacked control over the subconsultants. The contract stated the primary consultant, Land Use Associates, was an independent contractor. Based on this provision, the trial court could have found that City's control over Land Use Associates was very limited and did not extend to the selection of the subconsultants, much less how they performed the services required by Land Use Associates. (See Lab. Code, § 3353 [definition of "independent contractor"].) Thus, we conclude substantial evidence supports the implied finding that City did not control the subconsultants or their files.[8]

Based on the foregoing, we will affirm the trial court's denial of CID's petition under the Public Records Act.

II. *Certification of the Record of Proceedings*

Shortly after this court issued the order to show cause, it issued a related order directing the parties to address a number of specific issues concerning

---

[8] Because we have inferred the trial court found against CID on the question of possession, we do not address whether the subconsultants' files were "prepared, owned, used, or retained" by City and, thus, constituted a "public record" for purposes of Government Code section 6252, subdivision (e).

the certification of the record of proceedings. At the time, the question concerning the legal adequacy of the certification of the record of proceedings had the potential to be an important threshold question affecting our discussion of the issues concerning what documents and materials should have been included in the record of proceedings.

Based on our review of the arguments presented by the parties, we conclude that any legal inadequacy in the Certification of City Clerk of Administrative Record filed by City with the trial court in November 2010 will not constitute prejudicial error in the circumstances of this case.[9]

First, the certification no longer is the operative document that defines the contents of the record of proceedings. The trial court's September 14, 2011, order that specified the scope of the record of proceedings superseded City's certification. That order denied CID's motion to augment the record "with the exception that all documents agreed upon by the parties to be included in an augmented record during the course of these proceedings to date are approved by the court and shall be include[d] in the [record of proceedings]. The court deems the augmented [record of proceedings] to be complete and ripe for briefing and review by the court."[10]

■ This quoted language is the "determination of the completeness of the record of proceedings" referenced in section 21167.4, subdivision (c) and discussed in *Madera Oversight Coalition, Inc. v. County of Madera* (2011) 199 Cal.App.4th 48 [131 Cal.Rptr.3d 626]. In that case, we concluded that trial courts have the authority to resolve disputes between the parties over what should be included in, or excluded from, the record of proceedings and appellate courts review those determinations, not the determinations of the public agency that certified the record of proceedings. (*Id.* at pp. 63–66.)

Second, once this matter is sent back to the trial court and that court complies with our directions by issuing a new order, that new order by the

---

[9] One of the questions not reached in this case concerns whether Melanie Carter, the person City specified as the custodian of the record of proceedings in compliance with section 21081.6, subdivision (a)(2), simply implemented a finding by City regarding the materials that constituted the record of proceedings rather than independently determining its contents. (Guidelines, § 15091, subd. (e) ["agency shall specify the location and custodian of the documents or other material which constitute the record of the proceedings upon which its decision is based"]; see *Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 195, fn. 3 [138 Cal.Rptr.3d 428].)

[10] In its September 23, 2011, order setting a briefing schedule, the trial court also ordered that the record "be certified on or before September 30, 2011." Presumably, this order required City to certify the accuracy of the documents that constituted the augmented record that the court deemed to be complete.

trial court will be the operative determination of what the record of proceedings should have contained pursuant to section 21167.6, subdivision (e). In other words, the litigation will proceed based on the determination set forth in the trial court's order.

In the event that the trial court requires the public agency to certify the accuracy of copies of documents to be added to the administrative record, any such certification that the copies accurately reflect the originals will have no bearing on the completeness of the record of proceedings.

### III. *Motion for Discovery in a CEQA Proceeding*

City's return contends: "The motion for discovery was frivolous when made and remains so. Discovery is simply not allowed in a CEQA case, and CID does not claim otherwise."

■ City's contention that discovery is not allowed in a CEQA case is wrong. One need only look at the provisions of CEQA to see that the Legislature considered the possibility that discovery might be conducted in a CEQA proceeding and, thus, did not prohibit the use of discovery. The CEQA provision that establishes the briefing schedule authorizes the trial court to extend the schedule for "good cause," which explicitly includes "the conduct of discovery." (§ 21167.4, subd. (c).) This statutory reference to discovery establishes, without ambiguity, that discovery is possible in a CEQA proceeding.

Furthermore, published case law confirms that courts have allowed discovery in CEQA proceedings. In *No Slo Transit, Inc. v. City of Long Beach* (1987) 197 Cal.App.3d 241 [242 Cal.Rptr. 760], the plaintiff sought to take numerous depositions, and the trial court issued a protective order prohibiting the depositions but allowing all other forms of discovery. (*Id.* at p. 260.) The plaintiff sought a writ of mandate, which the appellate court denied, stating the protective order prohibiting depositions allowed the information to be obtained by less intrusive means of discovery such as interrogatories, request for production and request for admissions. (*Ibid.*) On appeal, the plaintiffs argued they had been deprived of the right to conduct discovery by the trial court's protective order. The appellate court again rejected this argument, stating the plaintiffs could have pursued other forms of discovery. (*Id.* at p. 261.)

Therefore, we reject City's claim that CID's discovery motion is frivolous as well as City's broader contention that discovery motions cannot be pursued in a CEQA proceeding. The disposition of CID's motion to conduct limited discovery is discussed in part VI.D., *post.*

IV. *Transcripts and Recordings of Hearings*

A. *Background Facts*

The record of proceedings certified and lodged by City included transcripts prepared by a certified shorthand reporter of the February 1, 2010, and March 1, 2010, public hearings of the city council. It did not include transcripts from (1) the planning commission's meeting on December 14, 2009, (2) the city council's special meeting on January 11, 2010, or (3) the city council meeting on March 15, 2010. The attorneys for CID sent an October 19, 2010, letter to the attorneys for City and Developer requesting transcripts of those three meetings be included in the record of proceedings. Counsel for City responded in a letter that stated: "Because those transcripts do not exist, the City cannot provide them. If you wish to purchase a copy of the tape recordings from these meetings and have those transcribed, you are free to do so, but based on past experience, the transcript is not likely going to be an accurate reflection of what was said by whom at that meeting. They never are. The tape recordings are often very unclear, particularly with respect to who is speaking at a given time and include multiple exchanges involving more than one person speaking at a given time. . . . If you procure the tape recording and prepare a transcript, we may object to its inclusion in the administrative record because it is not likely to be an accurate transcript of the oral proceedings."

Similarly, a letter from counsel for Developer stated there were no transcripts of the meetings, but that minutes of the meetings were included. The letter also stated that if CID wanted transcripts prepared, it should coordinate that directly at its sole cost and then could move to augment the record of proceedings after the transcripts were obtained.

B. *Statutory Language*

■ Pursuant to subdivision (e)(4) of section 21167.6, the record of proceedings shall include, but is not limited to, "[a]ny transcript or minutes of the proceedings" at which the decisionmaking body considered any environmental document concerning the project and "any transcript or minutes of proceedings" before an advisory body that were presented to the decisionmaking body prior to action on the environmental documents or on the project.

In addition, the record of proceedings shall include, but is not limited to, "[a]ny other written materials relevant to the . . . public agency's compliance with [CEQA] or to its decision on the merits of the project . . . ." (§ 21167.6, subd. (e)(10).)

### C. *Contentions of the Parties*

Based on subdivision (e)(4) of section 21167.6, CID contends that the record of proceedings must include transcripts of the three meetings.

In response, City contends CID's request for inclusion of transcripts in the record of proceedings is baseless because the evidence is that no transcripts of the meetings exist. City also contends the statute provides lead agencies with the option of providing "minutes" rather than a transcript. City asserts "the legislature plainly recognizes that proceedings before city councils and similar public agencies are rarely transcribed."

Developer argues that CID failed to take the reasonable step of purchasing the tape recordings of the meetings and having them transcribed. Developer further argues that this court must conclude the trial court impliedly found that CID failed to act with reasonable diligence in obtaining the transcripts, and this implied finding is sufficient to uphold the trial court's ruling. Like City, Developer interprets subdivision (e)(4) of section 21167.6 to require "that either a transcript **or** minutes of the proceedings be included in the ROP."

CID contends that the position that an agency can avoid including a transcript by including minutes lacks merit and is contrary to the inclusive nature of section 21167.6, subdivision (e).

### D. *Principles of Statutory Interpretation*

The interpretation of a statute and the application of that interpretation to a set of undisputed facts are questions of law subject to independent review on appeal. (*Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417 [134 Cal.Rptr.2d 740].) Our examination of the meaning of subdivision (e)(4) of section 21167.6 is guided by the following general principles of statutory construction.

A reviewing court's fundamental task in construing a statute is to determine the intent of the lawmakers so as to effectuate the purpose of the statute. Courts begin this task by scrutinizing the actual words of the statute, giving them their usual, ordinary meaning. (*Grayson Services, Inc. v. Wells Fargo Bank* (2011) 199 Cal.App.4th 563, 570 [131 Cal.Rptr.3d 789]; *Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 519 [128 Cal.Rptr.3d 658, 257 P.3d 81] [courts "begin with the plain, common-sense meaning of the language used by the Legislature"].) When statutory language is clear and unambiguous (i.e., susceptible to only one reasonable construction), courts adopt the literal meaning of that language, unless that

literal construction would frustrate the purpose of the statute or produce absurd consequences. In contrast, when the statutory language is ambiguous, courts must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute. (*Grayson Services, Inc. v. Wells Fargo Bank, supra*, at p. 570.) In short, courts adopt "the construction that best effectuates the purpose of the law." (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].)

### E. *Any Transcript*

For purposes of applying subdivision (e)(4) of section 21167.6 to the facts of this case, we will adopt the ordinary meaning of "transcript"—that is, a verbatim account of what was said at a proceeding in which the words are recorded in a visual, not auditory, format. (See Black's Law Dict. (6th ed. 1990) p. 1497, col. 1 (Black's 6th) [definition of "transcript"].) Under this definition, no transcripts of the three meetings in question exist. Therefore, the provision in subdivision (e)(4) of section 21167.6 concerning "[a]ny transcript or minutes" does not directly require an order of augmentation here.[11]

### F. *Audio Recordings as Other Written Materials*

The next question we consider is whether the record of proceedings should have been augmented pursuant to the following statutory language: "(e) The record of proceedings shall include, but is not limited to, all of the following items: [¶] . . . [¶] (10) Any other written materials relevant to the . . . public agency's compliance with [CEQA] or to its decision on the merits of the project . . . ." (§ 21167.6.)

In particular, we consider whether the audio recordings of the meetings constitute "other written materials" that were required to be part of the record of proceedings. It appears the audio recordings constitute "materials" and, thus, the controversy is narrowed to whether an audio recording is properly regarded as "written."

In some legal contexts, the term "written" is contrasted with the term "oral," such as oral or written testimony, and oral or written contracts.

---

[11] In reaching this conclusion, we refuse to adopt City and Developer's alternate argument that City had the option of including either transcripts or minutes of the proceedings. In short, we will not interpret "any transcript or minutes" to mean "either a transcript or minutes." The accountability and informed self-government purposes of CEQA are best served by interpreting "any transcript or minutes" as conjunctive and requiring the inclusion of all transcripts and minutes of the specified meetings or proceedings.

(Compare Code Civ. Proc., § 337 [four-year statute of limitations for written contracts] with *id.*, § 339 [two-year statute of limitations for oral contracts].) This distinction is reflected in the following definition of "writing": "Any intentional recording of words in a visual form, whether in the form of handwriting, printing, typewriting, or any other tangible form." (Black's Law Dict. (8th ed. 1999) p. 1641, col. 1 (Black's 8th).) In other legal contexts, the terms "written" and "writing" are given broader meanings. For example, the definition of "writing" in the version of Evidence Code former section 250 in effect when CEQA was amended to list the contents of the record of proceedings provided: " 'Writing' means handwriting, typewriting, printing, photostating, photographing, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof."[12] (Stats. 1965, ch. 299, § 2, pp. 1297, 1300.)

If a broad definition of "written" is used, similar to the definition of "writing" in Evidence Code section 250, then recordings of sounds upon a tangible thing (such as a magnetic tape or compact disc) are "written."

■ Based on the foregoing definitions, we conclude that the term "written" is ambiguous (i.e., reasonably susceptible of more than one meaning) and that ambiguity must be resolved in a way "that best effectuates the purpose of the law." (*Hassan v. Mercy American River Hospital, supra*, 31 Cal.4th at p. 715.) Because the law in question is CEQA, we must determine which interpretation best promotes accountability, informed self-government, and environmental protection. (*Laurel Heights Improvement Assn. v. Regents of University of California* (1993) 6 Cal.4th 1112, 1123 [26 Cal.Rptr.2d 231, 864 P.2d 502]; *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 392 [253 Cal.Rptr. 426, 764 P.2d 278].)

A broad interpretation of "written materials," one that includes audio recordings of meetings for which there is no transcript, best promotes CEQA's purposes of accountability and informed self-government. If the only record of what occurred at the meeting were the minutes, errors of exclusion could occur. Such exclusion—that is, the failure to record information in the minutes—could be important for various reasons. For example, the grounds of noncompliance with CEQA "presented to the public agency orally" are relevant to application of the doctrine of issue exhaustion set forth in subdivision (a) of section 21177. If minutes were to omit the fact that an issue was raised, and the transcript was not part of the record of proceedings,

---

[12] The current version of Evidence Code section 250 (amended by Stats. 2002, ch. 945, § 1, p. 5952) is even broader. It has added "photocopying, transmitting by electronic mail or facsimile" after the word "photographing" and has added the clause "and any record thereby created, regardless of the manner in which the record has been stored" at the end.

a plaintiff might be unable to show an issue was exhausted. Similarly, *who* made oral objections at a meeting could be relevant for determining who has standing to maintain a CEQA lawsuit under subdivision (b) of section 21177. We conclude, on this basis, that the purposes of CEQA are best served by interpreting the phrase "other written materials" to include audio recordings of meetings when no transcript of those meetings has been prepared.

The foregoing interpretation of "other written materials," we note, stands in harmony with the introductory language in section 21167.6, subdivision (e) that states the "record of proceedings shall include, *but is not limited to* . . . ." (Italics added.) This language demonstrates that the Legislature intended courts to avoid narrowly applying the 11 categories set forth in section 21167.6, subdivision (e) when such an application would subvert the purposes underlying CEQA.

■ In summary, the record of proceedings in this case should have included the audio recordings of the meetings before the city council and the planning commission. Therefore, CID's motion to augment should have been granted and an order issued directing the tape recordings of the three meetings be included in the record of proceedings.[13]

V. *Documents Referenced in Comment Letter*

CID contends that the record of proceedings should include certain studies and reports referred to in comment letters sent to City. For analytical purposes, we will divide these documents into four categories.

Documents in the first category had been provided previously to City by CID. Also, CID's comment letter stated it would provide another copy upon request and specifically asked that the documents be included in the record of proceedings.

Documents in the second category were named in the comment letters along with (1) a general Web site through which the document could be located using the World Wide Web and (2) a specific request that they be included in the record of proceedings. For purposes of this opinion, we use the term "general Web site" to refer to an organization's home page. When this site is accessed, further searching must be done to find the document referenced in the comment letter.

The third category consists of documents named in the comment letters with a citation to a specific Web page containing the document, but without a

---

[13] The parties have disagreed about who should pay for the transcription of audio recordings. We have located no authority for requiring the nonrequesting party to prepare or pay for the preparation of a transcript.

request that the documents be included in the record of proceedings. This opinion uses the term "specific Web page" to mean the location on the World Wide Web that (1) is identified by a unique address known as a uniform resource locator (URL) and (2) contains the document referenced in the comment letter. When the address denoted by the URL is accessed, the document in question appears—no further searching is necessary.

The fourth category consists of documents named in the comment letters, along with the organization that created the study or report. No information was provided as to where these documents might be available on the World Wide Web and no offer was made to provide a hard copy of the documents.

City contends the documents referenced in the comment letters were properly excluded from the record of proceedings because they were not submitted to City and City did not rely upon them.

A. *Background Facts*

1. *CID's comment letter*

CID sent a letter dated October 30, 2009, to City's development department commenting on the draft EIR. Three documents mentioned in that letter fit into the first category. The documents had been delivered previously to City in connection with another project. CID's letter offered to provide additional copies if requested by City and also asked that the documents be included in the record of proceedings. The documents are (1) the "Upper Kings Basin Integrated Regional Water Management Plan" (IRWMP) dated July 2007, (2) CID's Groundwater Management Plan of March 2009, and (3) a technical memorandum on the potential regional and local groundwater effects of urban growth prepared by WRIME, Inc. and dated July 2007.

Two documents in CID's comment letter fall within the second category: (1) The "Kings Basin Integrated Groundwater Surface Water Model, WRIME, Inc., November 2007 (available at Kings River Conservation District website www.krcd.org)" and (2) "Professional Paper 1766, Groundwater Availability of the Central Valley Aquifer, California, U.S. Geological Survey, 2009 (available at www.ca.water.usgs.gov/projects/centralvalley)."

The documents that fit the third category were referenced in the second and third footnotes of CID's comment letter: (1) "Intergovernmental Panel on Climate Change, Fourth Assessment Report (IPCC 4th) (2007) Working Group (WG) 1, Frequently Asked Question 2.1, *How do Human Activities Contribute to Climate Change and How do They Compare with Natural Influences?* http://ipcc-wg1.ucar.edu/wg1/FAQ/wg1_faq-2.1.html" and

(2) "the Attorney General's fact sheet, available at http://ag.ca.gov/globalwarming/pdf/GW_mitigation_measures.pdf."

The fourth category of documents includes a Senate Rules Committee, Office of Senate Floor Analyses, Unfinished Business Analysis of Senate Bill No. 97 (2007–2008 Reg. Sess.) as amended August 21, 2007, and two reports from the California Energy Commission released in 2007.

### 2. *Comment letter of air pollution control district*

The San Joaquin Valley Air Pollution Control District submitted a letter dated July 26, 2007, containing comments to the notice of preparation. The letter recommended that the EIR contain a description of the existing air quality conditions in the area and related regulatory environment. The letter stated the air pollution control district had "several sources of information available to assist with the existing air quality and regulatory environment section of the EIR." The sources referenced included (1) the air pollution control district's "Guide for Assessing and Mitigating Air Quality Impacts, 2002 Revision" with a specific Web page, "www.valleyair.org/transportation/ceqa_guidance_documents.htm" and (2) the most recent air quality data for the air pollution control district available on "http://www.valleyair.org/aqinfo/attainment.htm or on California Air Resources Board (ARB) website at http://www.arb.ca.gov/html/aqe&m.htm."

The air pollution control district's letter also stated the discussion of toxic air contaminants should use the health risk assessment guidelines and toxicity criteria promulgated by the Office of Environmental Health Hazard Assessment and, for additional guidance, the Developer should "refer to the *'Guidance for Air Dispersion Modeling'* document . . . found at http://www.valleyair.org/busind/pto/Tox_Resources/AirQualityMonitoring.htm."

All three of the documents referenced in the air pollution control district's comment letter fall within the third category—documents named with a reference to a specific Web page.

### B. *Statutory Provisions*

Subdivision (e) of section 21167.6 contains a list of materials that must be included in the record of proceedings. The list includes the following provisions, which CID contends are relevant to the issue whether a document referenced in a comment letter should be part of the record of proceedings.

"(6) All written comments received in response to, or in connection with, environmental documents prepared for the project, including responses to the notice of preparation.

"(7) All written evidence or correspondence submitted to, or transferred from, the respondent public agency with respect to compliance with [CEQA] or with respect to the project."

The parties' contentions present this court an issue of statutory interpretation for each provision. First, are any documents in the four categories described earlier "written comments received" for purposes of subdivision (e)(6) of section 21167.6? Second, are any such documents "written evidence . . . submitted to" City for purposes of subdivision (e)(7) of section 21167.6?

The parties have cited, and we have located, no published case that has addressed and decided any of these issues of statutory interpretation. Therefore, CID's writ petition raises issues of first impression under California law.

We are aware of published CEQA decisions that have discussed information contained on Web sites, but those cases have not resolved whether a document available through the World Wide Web should be made part of the record of proceedings under subdivision (e) of section 21167.6. For example, in *Lighthouse Field Beach Rescue v. City of Santa Cruz* (2005) 131 Cal.App.4th 1170 [31 Cal.Rptr.3d 901], a comment letter cited various Internet sources, but the court did not address whether information from those sources was part of that case's record of proceedings. (*Id.* at p. 1203.)

### 1. *Written comments received*

█ There is no question that the letters sent to City by CID, the air pollution control district, the Department of Fish and Game[14] and other public agencies constitute "written comments received" by City for purposes of section 21167.6, subdivision (e)(6). Whether documents cited in those letters are themselves "comments" is another matter. We conclude the term "comment" does not include documents cited to support the assertions and contentions made in the comment letter. Instead, we regard the documents cited in the comment letters as potential "evidence"—that is, something that tends to prove or disprove the existence of an alleged fact. (Black's 6th, *supra*, p. 555 [definition of "evidence"].)

---

[14] In *Mejia v. City of Los Angeles* (2005) 130 Cal.App.4th 322 [29 Cal.Rptr.3d 788], the court cited a Department of Fish and Game Web page that listed species of special concern. (*Id.* at p. 337, fn. 6.) The opinion did not address whether information contained on that Web page was part of the administrative record.

The Department of Fish and Game's Web page is compatible with Guidelines section 15201, which states that public participation is essential to the CEQA process and encourages public agencies to adopt procedures for wide public involvement. It also states: "Such procedures should include, whenever possible, making environmental information available in electronic format on the Internet, on a web site maintained or utilized by the public agency." (Guidelines, § 15201.)

Therefore, documents cited in a comment letter cannot be bootstrapped into the record of proceedings using the language in section 21167.6, subdivision (e)(6) that covers "written comments received."

### 2. *Written evidence submitted*

Our interpretation of "written evidence . . . submitted to" in section 21167.6, subdivision (e)(7) begins with a review of the meaning of each word in that phrase.

First, as previously described, "evidence" is something that tends to prove or disprove an alleged fact. (Black's 6th, *supra*, p. 555 [definition of "evidence"].) Second, as discussed in part IV.F., *ante*, "written" is susceptible of both broad and narrow interpretations. Because "written" is used in conjunction with "evidence," we will consider the definition of "writing" provided in the version of Evidence Code former section 250 that was in effect when CEQA was amended in 1994 to add subdivision (e)(7) to section 21167.6: " 'Writing' means handwriting, typewriting, printing, photostating, photographing and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof." (Stats. 1965, ch. 299, § 2, pp. 1297, 1300.)

The Law Revision Commission comment to this section stated: " 'Writing' is defined very broadly to include all forms of tangible expression, including pictures and sound recordings." (Cal. Law Revision Com. com., 29B pt. 1A West's Ann. Evid. Code (2011 ed.) foll. § 250, p. 93.) The phrase "every other means of recording upon any tangible thing" is broad enough to include a document available on the World Wide Web because that document has been recorded and stored on a server connected to the Web.

More generally, the latest version of Black's Law Dictionary available at the time subdivision (e)(7) to section 21167.6 was enacted defined "writing" as "[t]he expression of ideas by letters visible to the eye." (Black's 6th, *supra*, p. 1609, col. 1.)

 Each of these definitions of writing supports the conclusion that documents that can be accessed on the World Wide Web are "written." (See *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.* (S.D.Tex. 2000) 203 F.Supp.2d 704, 714 [placement of material on Internet Web site constituted " 'written publication of material' " for purposes of insurance policy].) It follows that such documents constitute "written evidence" for purposes of section 21167.6, subdivision (e)(7). As a result, the parties' dispute over the scope of section 21167.6, subdivision (e)(7) will turn on whether the documents referenced in the comment letters were "submitted to" City.

Webster's Third New International Dictionary (1986) defines "submit" to mean "to send or commit for consideration, study or decision: REFER . . . to present or make available for use or study: OFFER, SUPPLY . . . ." (*Id.* at p. 2277, col. 2; see *People v. Byrd* (1974) 38 Cal.App.3d 941, 949 [113 Cal.Rptr. 777] ["submit" used in parole release form means to yield to the will or the authority of or to present and to make available for use or study].) This definition, particularly the phrases "commit for consideration" and "make available for use," are sufficiently broad that the term "submit" could be interpreted to include providing a specific Web page or a general Web site where the document can be accessed and viewed on a computer connected to the Internet. Alternatively, it is possible to interpret the phrase "submitted to" to mean physical delivery to City of a copy of the document in some printed format. Because alternate meanings are possible, we conclude that section 21167.6, subdivision (e)(7) is ambiguous and we must resolve the ambiguity by adopting the interpretation that best effectuates the purpose of the statute and CEQA. (*Hassan v. Mercy American River Hospital, supra*, 31 Cal.4th at p. 715.)

■■■ We conclude that the term "submitted to"—which generally means presented or made available for use or study—is concerned with the effort that must be expended by the lead agency in using or studying the "written evidence" presented. (§ 21167.6, subd. (e)(7).) Consequently, we think that the term should be interpreted and applied pragmatically to fairly allocate the burden of handling the written evidence. Applying the term too broadly could place an unacceptable burden on lead agency personnel by requiring them to expend time and limited resources tracking down information that could have been provided more efficiently by the commenter. Based on considerations regarding the allocation of burden, we conclude that "written evidence" has been "submitted to" a lead agency for purposes of section 21167.6, subdivision (e)(7) when the commenter has made the document readily available for use or study by lead agency personnel.[15]

---

[15] We note that *Citizens for Responsible Equitable Environmental Development v. City of San Diego* (2011) 196 Cal.App.4th 515 [129 Cal.Rptr.3d 512] did not involve a question concerning the scope of the record of proceedings or the interpretation and application of any provision in section 21167.6, subdivision (e). In that case, the plaintiff sent the city a DVD containing over 4,000 pages of documents and data. The DVD had no table of contents, no particular organization, and no summary of material. (196 Cal.App.4th at p. 521.) The court concluded the citation to the DVD in the plaintiff's letter was insufficient for purposes of issue exhaustion to fairly present an issue related to drought where the letter did not mention drought. (*Id.* at p. 528.) The court did not believe the agency was required to pore through thousands of pages to find a specific ground arguably supporting the plaintiff's general claim that the project should not go forward. (*Ibid.*)

Nothing in our opinion should be read as implying a position on any other CEQA issue besides the application of subdivision (e) of section 21167.6. For example, we take no position on whether the comment letters and the references to documents available on the World Wide Web Internet fairly presented an issue for purposes of the doctrine of issue exhaustion.

### 3. *Applying "submitted to" to the four categories of documents*

The significant characteristics of the first category of documents are (1) hard copies were delivered to City by CID in connection with another project, (2) CID's letter stated it would provide City with additional copies upon request, and (3) CID's letter explicitly requested that the documents be included in the record of proceedings.

We conclude that CID made these documents readily available for use by City personnel and, therefore, the documents are part of the record of proceedings under section 21167.6, subdivision (e)(7). City's personnel who reviewed CID's comment letter could have obtained the documents by going to City's files for other projects or, if they deemed that too inefficient, could have requested a hard copy from CID. The burden of these steps seems minimal and is counterbalanced by the benefit to City of not receiving the same documents again and again with each new development project.

The second category of documents were named in CID's comment letter along with (1) a general Web site through which the document could be located using the World Wide Web and (2) a specific request that they be included in the record of proceedings. Developer argues that the lead agency should not have the duty or burden of accessing a general Web site, navigating through that site to find the specific Web page where the document is located, and ensuring that the material included at the specific Web page is the form of materials the commenter intended to reference. In allocating the burden between lead agency personnel and the commenter, we conclude that lead agency personnel should not be required to spend time searching for documents that the commenter asserts can be found through a general Web site. Presumably when the commenter is reviewing the document on the World Wide Web, it would take little effort to note the URL of the specific Web page where the document is located and include that URL in the comment letter. We do not doubt that some documents can be found easily if a general Web site is given. Conversely, other documents will be difficult to locate. In view of the potential variation from document to document, it is best to adopt a rule that will avoid subjecting lead agency personnel to potentially time-consuming efforts. We conclude, therefore, that the two documents referenced with a citation to general Web pages—"www.krcd.org" and "www.ca.water.usgs.gov/projects/centralvalley"—were not made readily available to City and, therefore, are not part of the record of proceedings under section 21167.6, subdivision (e)(7).

The third category contains five documents named in the comment letters of CID and the air pollution control district along with a citation to the specific Web page containing the document. We conclude that the information

provided made these documents readily available to City personnel. To access the document, the person need only type the URL into a computer connected to the Internet. The document will appear on the computer screen and no further searching is required. Thus, the burden placed on lead agency personnel is minimal when a commenter provides the URL to the specific Web page containing the document.

 The fourth category concerns those documents named in the comment letters without a citation to a general Web site or a specific Web page. In view of our conclusion that a document named in a comment letter with only a citation to a general Web site has not been made readily available to lead agency personnel, it automatically follows that documents merely referenced in a comment letter have not been "submitted to" the lead agency for purposes of section 21167.6, subdivision (e)(7). In such a situation, the effort put forth by the commenter was minimal and the time and effort required of lead agency personnel to track down that document would be too high. As pointed out by Developer, if the Legislature had intended such a minimal effort to warrant inclusion of the written evidence in the record of proceedings, it would have used "referenced to" instead of "submitted to."

### C. *Summary*

Based on our interpretation and application of section 21167.6, subdivision (e)(7), CID's motion to augment the record of proceedings should have been granted with respect to the following three documents from the first category and five documents from the third category:

(1) The Upper Kings Basin Integrated Regional Water Management Plan dated July 2007.

(2) CID's Groundwater Management Plan of March 2009.

(3) A technical memorandum on the potential regional and local goundwater effects of urban growth prepared by WRIME, Inc. and dated July 2007.

(4) "Intergovernmental Panel on Climate Change, Fourth Assessment Report (IPCC 4th) (2007) Working Group (WG) 1, Frequently Asked Question 2.1, *How do Human Activities Contribute to Climate Change and How do They Compare with Natural Influences?* http://ipcc-wg1.ucar.edu/wg1/FAQ/wg1_faq-2.1.html."[16]

(5) The Attorney General's fact sheet, available at "http://ag.ca.gov/globalwarming/pdf/GW_mitigation_measures.pdf."

(6) The San Joaquin Valley Air Pollution Control District's *"Guide for Assessing and Mitigating Air Quality Impacts, 2002 Revision,"* available at "www.valleyair.org/transportation/ceqa_guidance_documents.htm."

---

[16] This document currently is available at <http://www.ipcc.ch/publications_and_data/ar4/wg1/en/faq-2-1.html> (as of Apr. 26, 2012).

(7) The air quality data for the San Joaquin Valley Air Pollution Control District available at "http://www.valleyair.org/aqinfo/attainment.htm" or "California Air Resources Board (ARB) website at http://www.arb.ca.gov/html/aqe&m.htm."[17]

(8) The " *'Guidance for Air Dispersion Modeling'* document . . . found at http://www.valleyair.org/busind/pto/Tox_Resources/AirQualityMonitoring.htm."

VI. *Documents Referenced and Relied upon in EIR*

A. *Contentions*

██ CID's writ petition asserts that the record of proceedings is incomplete because of the omission of "documents referenced and relied upon in the EIR." CID elaborated on this assertion by stating it "seeks inclusion of all technical data and documents used in the preparation of the EIR for the Project." The statutory basis for inclusion of this group of documents appears to be subdivision (e)(10) of section 21167.6, which states that the record of proceedings shall include "copies of studies or other documents relied upon in any [EIR] prepared for the project *and* **either** made available to the public during the public review period **or** included in the . . . public agency's files on the project . . . ." (Italics & boldface added.)

CID's writ petition does not address the clause concerning documents made available to the public during the public review period. Instead, it appears CID is relying on the alternate clause—documents "included in the . . . public agency's files on the project"—in arguing that technical data and documents used in preparing the EIR and now held in the files of the subconsultants should be part of the record of proceedings. In effect, CID is arguing that the statutory language concerning the "public agency's files on the project" should be interpreted and applied to include the files of the subconsultants that worked on the EIR.

CID's argument about the files of the subconsultants is related to both its discovery motion and its motion to augment. CID contends it should have been allowed to conduct discovery to identify and locate project documents that are not in the record of proceedings because they are stored in the office of one or more subconsultants. Thus, if documents belonging in the record of proceedings were located during discovery, those documents could be added to the record of proceedings under CID's motion to augment.

City's position regarding documents referenced and relied upon in the EIR was set forth, in part, in a November 23, 2010, letter from the attorney

---

[17] The URL maintained by the State Air Resources Board (ARB) is no longer available.

representing City to CID's counsel: "The documents that are referred to, but not attached to the EIR and other documents generated by the consultant preparing the EIR are not documents that are in the possession or control of the City and cannot be produced by it. Further, since these referenced documents are not something generated by, presented to, reviewed by or otherwise relied upon by the City in approving this project, all such reference documents are simply not properly part of any administrative record."

In opposing City's position that it need produce only documents actually in its physical possession, CID contends (1) the primary consultant, Land Use Associates, engaged multiple subconsultants to prepare major portions of the EIR, (2) many documents used by the subconsultants in preparing the EIR were not provided to Land Use Associates, (3) the subconsultant files have not been made available to CID, much less included in the record of proceedings, and (4) the law should not allow many technical documents to sit in subconsultants' offices, hidden from scrutiny by the public and judicial system.

### B. *Construction of the Statute*

The dispute over the files of the subconsultants involves the meaning of the statutory phrase concerning documents "included in the . . . public agency's files on the project" (§ 21167.6, subd. (e)(10).)

We conclude that the statute's use of the possessive "public agency's files" is not ambiguous. It refers to files owned or in the possession of the public agency. Generally, possession denotes custody, control, or dominion and includes both actual and constructive possession. (*Batt v. City and County of San Francisco, supra*, 184 Cal.App.4th at p. 172.) Therefore, we conclude that the term "public agency's files" means files owned by the agency or in its custody or control. Had the Legislature intended a narrower definition— for example, one limited to actual physical possession—it would have stated so. (Health & Saf. Code, § 25299.57, subd. (d)(4)(H) [phrase "actual possession of, and control over," used in definition of "de facto owner"].)

### C. *Application of Phrase to Facts of This Case*

#### 1. *Files of primary consultant*

In the circumstances of this case, the phrase "public agency's files on the project" includes the files maintained by Land Use Associates on the project. Paragraph No. 10 of the agreement between City and Land Use Associates

states that City owns the contents of those files.[18] Thus, it cannot be disputed that City holds an ownership interest in those files.

The conclusion that the primary consultant's files are part of the "public agency's files on the project" for purposes of section 21167.6, subdivision (e)(10) does not demonstrate reversible error occurred because files of Land Use Associates have been made available to CID and have been included in the record of proceedings as a result of the trial court's order of September 14, 2011.

### 2. *Files of subconsultants*

Whether the files of subconsultants in this case are part of the "public agency's files on the project" (§ 21167.6, subd. (e)(10)) depends upon the rights that City holds in those files. As discussed in part I.D., *ante*, the trial court's implied finding that City has no ownership rights in the subconsultants' files is supported by sufficient evidence. Furthermore, CID's assertion that there was no reason to expect that the subconsultants would not have been cooperative if City had asked them to provide copies of their project files is insufficient to establish that the files were owned by, or in the custody or control of, City.

Therefore, we conclude that CID has not demonstrated the trial court erred in its ruling the files of the subconsultants were not part of the "public agency's files on the project" for purposes of section 21167.6, subdivision (e)(10).[19]

---

[18] Paragraph No. 10 of the contract provides in full: "Possession of Materials Prepared Under the Contract. It is agreed that all finished or unfinished documents, data, studies, surveys, drawings, maps, models, photographs, computer discs, and reports prepared by the Contractor under this Agreement shall be the property of the City, and upon completion of the Services to be performed or upon termination of this Agreement for any reason, the original and any copies thereof will be turned over to the City provided that the Contractor may, at no additional expense to the City, make and retain such copies thereof as desired."

[19] In an effort to avoid improper inferences in subsequent proceedings in this case, we explicitly qualify this statement by noting that it does not mean that none of the documents in the subconsultants' files *would have qualified for inclusion* in the administrative record if all of the provisions of CEQA and the Guidelines had been followed. For example, if documents used in the preparation of the draft EIR were cited in accordance with Guidelines section 15148 and, as a result of being cited or referenced in the draft EIR, were made available for public review in accordance with Public Resources Code section 21092, subdivision (b)(1), then those documents would have qualified for inclusion in the administrative record under the clause in section 21167.6, subdivision (e)(10) concerning documents referenced in the EIR and made available to the public during the public review period. The issues regarding compliance with provisions of CEQA and the Guidelines that affect the scope of the administrative record (as opposed to those provisions in § 21167.6, subd. (e) that define the contents of the record) are beyond the scope of this opinion.

### D. *Impact on Motion to Conduct Limited Discovery*

The stated purpose of CID's motion to conduct limited discovery was to identify and locate documents that were not included in the administrative record and were in the possession of the subconsultants. CID's petition explicitly states that it is not seeking to obtain extra-record evidence. The scope of the discovery motion is illustrated in part by the prayer in the petition CID filed with this court. It requests an order granting the discovery motion and "allowing [CID] to obtain the records that constitute the administrative record and submit that record for certification and lodging with the trial court."

Because we have made a categorical determination that the files of the subconsultants are not part of the administrative record under section 21167.6, subdivision (e)(10), the ground on which CID sought discovery of those files is not present. Thus, the trial court properly denied the discovery motion seeking access to those files.

VII., VIII.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing the Superior Court of Fresno County to (1) vacate the portion of its order dated September 14, 2011, that denies Consolidated Irrigation District's motion to augment the administrative record, and (2) enter a new order granting the motion to augment the administrative record with the documents identified in the following paragraph and with the documents described in the exception contained in paragraph No. 3 of the September 14, 2011, order.

The administrative record in this matter shall include (1) copies of the audio recordings of (a) the planning commission's meeting on December 14, 2009, (b) the city council's special meeting on January 11, 2010, and (c) the city council meeting on March 15, 2010, (2) the eight documents listed in part V.C., *ante*, of this opinion, (3) the March 2010 letter from Fresno County to City concerning the project.

---

*See footnote, *ante*, page 697.

Pursuant to California Rules of Court, rule 8.493(a)(1)(B), the parties shall bear their own costs in this proceeding.

Cornell, Acting P. J., and Kane, J., concurred.

A petition for a rehearing was denied on May 23, 2012, and the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied August 8, 2012, S203710.