[No. F059773. Fifth Dist. Sept. 26, 2011.]

GRAYSON SERVICES, INC., Plaintiff and Appellant, v.
WELLS FARGO BANK, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II.A., B. & C., and III. of the Discussion.

### COUNSEL

Mahaffey & Associates, Douglas L. Mahaffey, Susan B. Ghormley and Daniel Willett for Plaintiff and Appellant.

Barton, Klugman & Oetting and Thomas E. McCurnin for Defendant and Respondent.

### OPINION

**FRANSON, J.—**

## INTRODUCTION

Based on a default judgment, a judgment creditor served a writ of execution and notice of levy on Wells Fargo Bank (Wells Fargo) in an

attempt to obtain two certificates of deposit and related interest payments that the judgment creditor believed were the property of its judgment debtor. The certificates of deposit in question were in the possession of, and made payable to, a public entity. The accrued interest had been delivered to a creditor with a competing levy. Consequently, Wells Fargo's memorandum of garnishee stated it had nothing to report and no certificates or funds were delivered in response to the levy. A second writ of execution and levy were served on Wells Fargo, with essentially the same response.

The judgment creditor sued Wells Fargo in a separate action alleging (1) the bank's response to the levies violated its duties under California's Enforcement of Judgments Law (EJL)[1] and (2) the bank conspired with its customer and others to fraudulently transfer assets and hinder the judgment creditor's attempts to levy on those assets.

The trial court eliminated both claims at the pleading stage. First, the court sustained a demurrer to the conspiracy claim, concluding there was no allegation that a fraudulent transfer (the wrongful act underlying the conspiracy) had occurred. Later, the court granted a motion for judgment on the pleadings, concluding the claim alleging a violation of the EJL could not be pursued against a financial institution. The judgment creditor appealed.

In the published portion of this opinion, we conclude that a bank chartered as a national association is a "person" as defined in section 680.280 and, accordingly, is subject to the duties and liabilities imposed on "third person[s]" by the EJL, particularly sections 701.010 (duty of garnishee), 701.020 (liability for noncompliance with levy), and 701.030 (garnishee's memorandum).

In the unpublished portions, we conclude the allegations that Wells Fargo failed to deliver funds representing interest accrued on the certificates of deposit were sufficient to state a claim under the EJL. In addition, we conclude that the allegations in the conspiracy claim (1) were insufficient to allege a violation of the Uniform Fraudulent Transfer Act (Civ. Code, §§ 3439–3439.12) and (2) failed to allege with the requisite particularity all the elements of a general fraud claim based on false representations or concealment. These allegations, however, were sufficient to allege all the elements of a claim for conversion of personal property.

Therefore, the judgment of dismissal is reversed and the matter remanded for further proceedings.

---

[1] The EJL is contained in title 9 of part 2 of the Code of Civil Procedure. It consists of five divisions, beginning at Code of Civil Procedure section 680.010 and ending at section 724.260. All further statutory references are to the Code of Civil Procedure unless indicated otherwise.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2001, Grayson Services, Inc. (Grayson), filed a complaint against New Chaparral Petroleum, Inc. (New Chaparral), in Kern Superior Court, alleging New Chaparral had not paid for oil and gas well work performed by Grayson. In February 2002, Grayson obtained a default judgment against New Chaparral for $94,115.83.

In February 2005, Grayson filed a notice of judgment lien with the California Secretary of State that listed New Chaparral as the judgment debtor. Grayson alleges it obtained a writ of execution in April 2006, which it later served, along with a notice of levy, on a Wells Fargo branch in Bakersfield, California. Wells Fargo returned the levy to the Kern County Sheriff noting in the memorandum of garnishee report there were no assets in its possession responsive to the writ of execution and levy.

In October 2007, Grayson filed a separate complaint against Wells Fargo, New Chaparral, and Core Energy, LLC.[2] The only cause of action against Wells Fargo alleged the bank had violated the EJL by failing to deliver a $150,000 certificate of deposit to the levying officer in response to Grayson's April 2006 writ of execution. Grayson later obtained a second writ of execution and served a second levy on Wells Fargo in September 2008, seeking to levy on the two certificates of deposit listed below and accrued interest. The memorandum of garnishee again reported there were no assets to report or release, but did note that $11,735 was being held in an interest account, pending further order from the Kern County Sheriff because a third party, Core Energy, was also claiming an interest in the funds.

Following successful demurrers by Wells Fargo, Grayson filed a second amended complaint in April 2009, containing two causes of action.[3] The first cause of action alleged Wells Fargo violated the EJL by failing to deliver monies it held for the account of New Chaparral and failing to provide correct information in the garnishee's memorandum. The second cause of action alleged Wells Fargo participated in a conspiracy to fraudulently convey certificates of deposit and other money accounts subject to Grayson's levy to

---

[2] New Chaparral had financial difficulties and Core Energy attempted to acquire some of its wells and assets.

[3] The exhibits referenced in the second amended complaint are not attached to that complaint as set forth in the appellant's appendix. Some of those exhibits, however, are located elsewhere in the appellate record. Also, the trial court's January 2010 order denying the motion for new trial makes several references to exhibits attached to the second amended complaint. Therefore, we infer that those exhibits were attached to the second amended complaint in the form filed in the superior court.

third parties to hinder or defeat Grayson's attempts to collect the judgment against New Chaparral. The second amended complaint is the operative pleading in this appeal.

As alleged in the second amended complaint, Wells Fargo had previously issued two certificates of deposit (CD). The first, dated April 22, 1998, referenced account 1892029489-000, and was for $100,000. That CD was issued with monies deposited by Capital Acquisition, Inc., for Chaparral Petroleum, Inc., and was payable to the California Division of Oil, Gas and Geothermal Resources (DOGGR). The CD was for a term of 12 months and stated it would automatically renew at maturity. The interest on the CD, $4,870 per year, was to be paid at maturity and credited to another account, 0900-919598, in the name of Capital Acquisition, Inc.

The second CD referenced account 1892-029547-000, was for $150,000, was dated April 10, 2000, was payable to DOGGR, and was from funds deposited by New Chaparral. The certificate was to automatically renew, with interest paid monthly with an annual return of $6,555 per year, credited to account 6867-538787, in the name of New Chaparral. The first cause of action alleges that Wells Fargo failed to honor the 2006 and 2008 levies and turn over the two CD's and accrued interest accounts to Grayson.

Wells Fargo demurrered to the second cause of action, contending Grayson's conspiracy claim failed to state a cognizable cause of action because (1) Grayson had suffered no damages, (2) the allegations state the alleged fraudulent conveyance was unsuccessful, (3) Wells Fargo's knowledge of the fraud was not pled with sufficient specificity, and (4) Grayson had failed to join indispensable parties.

In June 2009, the trial court rejected the failure to join indispensable parties argument, but sustained the demurrer to the conspiracy claim on the other three grounds, without leave to amend.

In July 2009, Wells Fargo filed a motion for judgment on the pleadings on the first cause of action for failure to comply with the EJL, asserting Grayson had suffered no damages, because the underlying judgment against New Chaparral had been satisfied and Grayson lacked standing under section 367 to assert account irregularities concerning the two CD's that were alleged to have occurred prior to the levy. The trial court granted the motion without leave to amend, concluding that Grayson's suit was barred by the satisfaction of the underlying judgment, and Grayson lacked standing to assert a claim concerning account irregularities.

In October 2009, Grayson filed a motion for new trial, asserting that its allegations were sufficient to state a claim under the EJL and the court's

determination that its judgment had been satisfied was a finding of fact that should not have been made at the pleading stage of the lawsuit.

Later in October 2009, before the motion for new trial was heard, the trial court filed a judgment dismissing the action with prejudice and awarding Wells Fargo its costs of suit. No notice of entry of judgment was served.

In January 2010, following a hearing on the motion for new trial, the court denied the motion for new trial, although it reversed its finding that the underlying judgment had been satisfied.

Grayson thereafter filed a timely notice of appeal.

## DISCUSSION

I. *Standard of Review*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Claims for Violations of the EJL*

The EJL is a comprehensive statutory scheme for the enforcement of civil judgments in California. (*SBAM Partners, LLC v. Wang* (2008) 164 Cal.App.4th 903, 909 [79 Cal.Rptr.3d 752].) The Legislature enacted the EJL in 1982 based on the recommendation of the California Law Revision Commission. (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2008) 168 Cal.App.4th 185, 192 [85 Cal.Rptr.3d 350].)

A.–C.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

D. *A National Banking Association Is a Person for Purposes of the EJL*

The trial court's written order denying Grayson's motion for new trial stated that the provisions of the EJL concerning the duty of a garnishee (§ 701.010), liability for noncompliance with a levy (§ 701.020), and the garnishee's memorandum (§ 701.030), applied to "third persons." The court concluded that a financial institution was not a "person" or a "third person" under the EJL based on the separate statutory definitions for "financial

---

[*]See footnote, *ante*, page 563.

institution" and "person" contained in sections 680.200 and 680.280. Because Wells Fargo was a financial institution, the court concluded that it was not subject to the statutory duties and liabilities imposed on "third persons."

On appeal, Grayson contends that the trial court's interpretation of the EJL was erroneous. In Grayson's view, the statutory provisions apply to all garnishees, irrespective of whether the garnishee is a financial institution. We agree.

The interpretation of a statute and the application of that interpretation to a set of undisputed facts are questions of law subject to independent review on appeal. (*Twedt v. Franklin* (2003) 109 Cal.App.4th 413, 417 [134 Cal.Rptr.2d 740].) Our inquiry into the meaning of the EJL is guided by the following general principles of statutory construction.

■ A reviewing court's fundamental task in construing a statute is to determine the intent of the lawmakers so as to effectuate the purpose of the statute. (*Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 20 [115 Cal.Rptr.3d 416].) Courts start this task by scrutinizing the actual words of the statute, giving them their usual, ordinary meaning. (*Id.* at p. 21.) When statutory language is clear and unambiguous (i.e., susceptible to only one reasonable construction), courts adopt the literal meaning of that language, unless that literal construction would frustrate the purpose of the statute or produce absurd consequences. (*Ibid.*) In contrast, when the statutory language is ambiguous, courts must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute. (*Ibid.*)

This appeal presents a general, conceptual issue regarding the interpretation of the EJL, and a specific question regarding the application of the statute to Wells Fargo. The first question is whether an entity can be both a "financial institution" under section 680.200 and a "person" under section 680.280. The second question is whether Wells Fargo is a "person" under the EJL and, thus, subject to the statutory duties and liabilities imposed on "third persons" who have been served with a levy. (See §§ 701.010, 701.020, 701.030.)

### 1. Financial Institutions Are Not Excluded from the Definition of "Person"

Pursuant to the rules of statutory construction, our analysis of the first issue begins with the words used in the EJL to define the terms "person" and "financial institution." " 'Person' includes a natural person, a corporation, a partnership or other unincorporated association, a general partner of a partnership, a limited liability company, and a public entity." (§ 680.280.) "Financial

institution" means "a state or national bank, state or federal savings and loan association or credit union, or like organization, and includes a corporation engaged in a safe deposit business." (§ 680.200.)

The text of these definitions contains no words of exclusion. Specifically, the definition of "person" does not exclude from its scope entities that meet the definition of "financial institution" and vice versa. To the contrary, the words used demonstrate that the definitions overlap. The most obvious overlap concerns "a corporation engaged in a safe deposit business." (§ 680.200.) Such an entity is a "financial institution." (*Ibid.*) In addition, because the entity is "a corporation" it also meets the definition of a "person." (§ 680.280.) There is no textual basis for concluding that such a corporation is not among the corporations that qualify as a "person" because the definition of a "person" contains no exclusions, exceptions, or provisos. (*Ibid.*)

Additional overlap between the two definitions is possible. For instance, savings and loan associations are listed in the definition of "financial institution." Thus, if a savings and loan association is the type of association that qualifies as an "unincorporated association" for purposes of section 680.280, it would satisfy both definitions. Similarly, if a national bank is a corporation or an unincorporated association, it would satisfy both definitions.

■ Based on a literal reading of the language in the EJL, we conclude that an entity meeting the definition of a financial institution in section 680.200 is not automatically excluded from being a "person" under section 680.280. Consequently, a financial institution that meets the definition of a "person" is subject to the duties and liabilities imposed by the EJL on a "third person" that has been served with a levy, unless the EJL explicitly sets forth a special rule or exception for financial institutions. (E.g., former § 700.160, subd. (e) [garnishee financial institutions are not liable for certain delays].)

### 2. *Wells Fargo Is a Person Subject to the EJL*

The next question concerns how the definitions in the EJL apply to Wells Fargo.[6] The second paragraph of Grayson's second amended complaint

---

[6] At oral argument, counsel for Wells Fargo conceded that the EJL applied to Wells Fargo and referenced a recent United States Supreme Court case in which corporations were treated the same as natural persons for purposes of the First Amendment. (See *Citizens United v. Federal Election Comm'n* (2010) 558 U.S. ___, ___ [175 L.Ed.2d 753, 130 S.Ct. 876, 900] [1st Amend.'s protection of political speech extends to corporations and is not limited to natural persons]; see also *Genesis Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.* (2003) 113 Cal.App.4th 597, 605, fn. 9 [6 Cal.Rptr.3d 574] [corporations are persons for purposes of 42 U.S.C. § 1983].)

alleges: "WELLS FARGO BANK, N.A. ('WELLS FARGO') is a banking institution doing business in Kern County, California." The abbreviation "N.A." stands for "national association." In *Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082 [282 Cal.Rptr. 841, 811 P.2d 1025], the California Supreme Court stated: "Wells Fargo Bank, National Association (hereafter referred to as Wells Fargo or the bank) is a national banking association created pursuant to the [National Bank] Act. (12 U.S.C. § 21 et seq.) Wells Fargo operates a statewide network of branch banks, each of which has a branch manager." (*Id.* at p. 1086.)[7] Therefore, we conclude that Wells Fargo is a national banking association and, as a national bank, meets the definition of a financial institution contained in section 680.200.

Whether Wells Fargo qualifies as a person for purposes of section 680.280 will depend on whether it is "a corporation" or an "unincorporated association." Before considering these two terms, we will address whether the EJL impliedly recognized the existence of *incorporated associations* and intended to exclude that type of entity from the definition of a person.

We have found case law that uses the term "incorporated association." (E.g., *Rancho La Costa, Inc. v. Superior Court* (1980) 106 Cal.App.3d 646, 665 [165 Cal.Rptr. 347]; *Redondo Beach Police Officers Assn. v. City of Redondo Beach* (1977) 68 Cal.App.3d 595, 599 [137 Cal.Rptr. 384] [municipal employees union referred to as incorporated association].) These cases, however, do not hold that an incorporated association is different from a corporation. In addition, our review of the Recommendation Relating to Enforcement of Judgments Law (Sept. 1982) 16 California Law Revision Commission Report (1982) page 1009 et seq. found no reference or indication that an incorporated association is distinct from a corporation. Furthermore, we have located no purpose or public policy underlying the EJL that would be promoted by treating incorporated associations as distinct from corporations and outside the definition of a "person." Based on the foregoing, we conclude that to the extent an entity might be called an incorporated association, it would be regarded as a corporation and therefore a person for purposes of the EJL. Accordingly, even if a national banking association could be described as an incorporated association, it would be inappropriate

---

[7] Section 21 of title 12 of the United States Code addresses the formation of national banking associations and their articles of association as follows: "Associations for carrying on the business of banking under title 62 of the Revised Statutes may be formed by any number of natural persons, not less in any case than five. They shall enter into articles of association, which shall specify in general terms the object for which the association is formed, and may contain any other provisions, not inconsistent with law, which the association may see fit to adopt for the regulation of its business and the conduct of its affairs. These articles shall be signed by the persons uniting to form the association, and a copy of them shall be forwarded to the Comptroller of the Currency, to be filed and preserved in his office."

to use that description as a basis for concluding the national bank falls outside the scope of the EJL's definition of a person.

Next, we note that whether Wells Fargo is categorized as a corporation or an unincorporated association is not important in this case. The important question is whether it is a "person" under the EJL, a status it can achieve by being *either* a corporation *or* an unincorporated association. As discussed below, we conclude that Wells Fargo is either one or the other and, thus, qualifies as a person for purposes of the EJL.

■ The EJL does not define the term "unincorporated association."[8] Consequently, we will determine the usual, ordinary meaning of that term. (*Smith v. Selma Community Hospital, supra,* 188 Cal.App.4th at p. 20 [courts scrutinizing words of statutes give them their usual, ordinary meaning].)

One source for the usual, ordinary meaning of the term might be other statutes. Corporations Code section 18035, subdivision (a) defines "unincorporated association" to mean "an unincorporated group of two or more persons joined by mutual consent for a common lawful purpose, whether organized for profit or not."

Another source is case law. Thirty years ago, the court in *DeMott v. Board of Police Commissioners* (1981) 122 Cal.App.3d 296 [175 Cal.Rptr. 879] stated that "[t]he law of unincorporated association[s] is sparse." (*Id.* at p. 305.) The court went on to state: "In an early California case, *Law v. Crist* (1940) 41 Cal.App.2d 862, 865 [107 P.2d 953], the court said: ' "The usual meaning of the term 'association' is an 'unincorporated organization composed of a body of men partaking in general form and mode of procedure of the characteristics of a corporation.' " ' Corporate resemblance is relevant but not conclusive; *Scott v. Donahue* [(1928)] 93 Cal.App. 126 [269 P. 455]."

The court in *Law v. Crist, supra,* 41 Cal.App.2d at page 865 stated that the term "association" often is synonymous with "company" or "society." (See generally 7 Cal.Jur.3d (2011) Associations and Clubs, § 1, pp. 120–122 ["association" defined].)

■ The plain and unambiguous meaning of the word "unincorporated" is "not incorporated." Thus, the term "unincorporated association" means a group or organization of two or more people or entities that is not incorporated.

---

[8] This term is part of the statutory phrase "a partnership or other unincorporated association." (§ 680.280.) We note that the phrase "a partnership or other unincorporated association" used in section 680.280 appears elsewhere in the Code of Civil Procedure. Section 369.5, subdivision (a) states: "A partnership or other unincorporated association, whether organized for profit or not, may sue and be sued in the name it has assumed or by which it is known."

Applying this interpretation of "unincorporated association," we conclude that a national banking association meets the definition of a person under section 680.280 because it is either a corporation or an unincorporated association.

On the one hand, a national banking association is a federally chartered entity labeled an "association" by federal law. (E.g., 12 U.S.C. §§ 21, 37.) Thus, if we strictly adhere to the federal label, a national banking association would be classified as an "unincorporated association" for purposes of section 680.280.

On the other hand, if one looks behind the federal label, one sees a federally chartered entity with the organizational characteristics of a corporation. For example, the provision of the National Banking Act that sets forth a national banking association's powers refers to the entity as "a body corporate" with the power to "adopt and use a corporate seal," elect or appoint a board of directors, and prescribe bylaws. (12 U.S.C. § 24.) Also, as a safeguard for national banks with financial subsidiaries, the statute requires such banks to take steps to "preserve the separate corporate identity and limited liability" of the bank. (12 U.S.C. § 24a(d)(2).) In addition, the articles of association that a national bank must file with the Office of the Comptroller of the Currency (OCC) appear to serve the same function as articles of incorporation. (Compare 12 U.S.C. § 21 with Corp. Code, § 202.)

A further demonstration that a national banking association operates like a corporation is provided by the rules adopted by the OCC. Part 5 of title 12 of the Code of Federal Regulations "establishes rules, policies and procedures of the [OCC] for corporate activities and transactions involving national banks." (12 C.F.R. § 5.1 (2011).) The numerous references to "corporate activities" of a national bank indicate that the OCC regards a national bank as a corporate entity or its equivalent. (E.g., 12 C.F.R. § 5.3(b), (j) (2011).) A further indication exists in the provision titled "Corporate status" that addresses the authority of an interim bank to enter agreements. (12 C.F.R. § 5.33(e)(4)(iii) (2011) ["An interim bank becomes a legal entity and may enter into legally valid agreements when it has filed, and the OCC has accepted, the interim bank's duly executed articles of association and organization certificate."].)

Regardless of whether one (1) adheres to the federal label and concludes a national banking association is an "association" for purposes of section 680.280 or (2) examines the entity's underlying organizational characteristics and determines that, for all practical intents and purposes, a national banking association is a federally chartered corporation bearing the label of an association, the result is the same. A national banking association is one or the other and thus is a "person" under section 680.280.

As the final step in our statutory analysis, we will insert our conclusion that a national bank is a "person" under the EJL into the statute's other provisions and examine whether the statutory purposes are promoted or frustrated and whether statutory harmony or discord results.

We have found no reason why subjecting national banks to the statutory duties and liabilities imposed on "third persons" who have been served with a levy would frustrate the purpose or policies underlying the EJL. In addition, the statutory scheme assumes that financial institutions are subject to those duties and liabilities unless provided otherwise by the statutes. For example, section 701.010 sets forth the duty of a garnishee by stating, in part: "(a) Except as otherwise provided by statute, when a levy is made by service of a copy of the writ of execution and a notice of levy on a third person, the third person at the time of levy or promptly thereafter shall comply with this section."

The 1982 California Law Revision Commission's comment to section 701.010 addresses this subdivision as follows: "The introductory portion of subdivision (a) recognizes exceptions to the duty of the garnishee. See, e.g., Section[] 700.160 (delay by a financial institution) . . . ." (Recommendation Relating to Enforcement of Judgments Law, supra, 16 Cal. Law Revision Com. Rep. (1982) com. foll. § 701.010, p. 1348.) An exception for financial institutions would not be necessary unless the general rule contained in section 701.010, subdivision (a) applied to financial institutions in the first place. Because section 701.010 applies to a "third person" who has been served with a levy, the existence of an exception for financial institutions in certain situations unequivocally implies that a financial institution is a "third person." If a financial institution was not a third person, there would have been no reason for the Legislature to create an exception for financial institutions. Thus, financial institutions must be regarded as third persons for the statutory scheme to work in harmony.

This statutory analysis is consistent with other published cases. In those cases, banks were treated as subject to the duties imposed on a "third person" by the EJL. (See *Grover v. Bay View Bank* (2001) 87 Cal.App.4th 452, 459 [104 Cal.Rptr.2d 677] ["the bank breached its duty under section 701.010 when it failed to honor the writ of execution" (fn. omitted)]; *Da-Green Electronics, Ltd. v. Bank of Yorba Linda* (9th Cir. 1989) 891 F.2d 1396, 1397 [§ 701.010, subd. (a) imposes a duty on banks to honor writs of execution on the property of judgment debtors].)

In summary, we conclude that a national banking association is a person under section 680.280 and is subject to the duties and liabilities imposed on third persons by sections 701.010, 701.020, and 701.030 of the

EJL, unless a specific exception or special rule applies to financial institutions. Therefore, the allegations in Grayson's first cause of action were sufficient to state a cognizable theory of recovery against Wells Fargo even though it is a financial institution.

III. *Sufficiency of Second Cause of Action, Which Alleged a Conspiracy**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment of dismissal is reversed and the matter remanded to the trial court with instructions to vacate its prior orders (1) granting the motion for judgment on the pleadings as to the first cause of action in the second amended complaint and (2) sustaining the demurrer to the second cause of action in the second amended complaint.

Grayson shall recover its costs on appeal.

Gomes, Acting P. J., and Kane, J., concurred.

*See footnote, *ante*, page 563.