Filed 4/19/21  Nossaman v. Norgaard CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NOSSAMAN LLP, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHRISTOPHER NORGAARD, <br><br> Defendant and Appellant. | B291410 <br><br> (Los Angeles County Super. Ct. Nos. BC534889, BC635527) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Keosian, Judge.  Affirmed.

Christopher Norgaard, in pro. per., for Defendant and Appellant.

Herzlich & Blum, Allan Herzlich and Jerome J. Blum for Plaintiff and Respondent.

————————————

# INTRODUCTION

Christopher Norgaard appeals from a judgment following a court trial awarding Nossaman LLP $155,524.55. Those funds took a winding and circuitous path to the judgment. Nossaman originally represented Adrian Herling Waworuntu in a fraud action arising from Waworuntu's investment in a real estate project. Norgaard substituted in for Nossaman as counsel for Waworuntu during the litigation. Nossaman sued Waworuntu for unpaid legal fees, obtained a default judgment against him, and filed a lien in a pending action against Waworuntu's interest in, and any eventual recovery from, the fraud action.

Several years later Waworuntu obtained a $12 million judgment in the fraud action, but the defendants in that case were judgment proof. Two of the defendants, however, received a settlement payment as a result of a co-defendant's bankruptcy proceeding in which Waworuntu was an approved creditor. Norgaard eventually received part of that settlement on Waworuntu's behalf and deposited the funds first into his client trust account and then into to his general account. After Nossaman learned of the settlement and payment, Nossaman filed a notice of levy under writ of execution naming Norgaard as a third person in possession of funds subject to Nossaman's judgment against Waworuntu. When Norgaard claimed he did not possess any funds subject to the levy, Nossaman filed this action against him. The $155,524.55 judgment Nossaman obtained is the result of that (and a related) lawsuit.

Norgaard argues the trial court erred in ruling in favor of Nossaman because the original lien in a pending action was not effective, the execution lien against Norgaard did not relate back

to the lien in a pending action, Norgaard did not possess or ever receive funds described by the notice of levy, and even if Norgaard possessed funds described by the notice of levy, they were paid to him pursuant to an order issued in the fraud action. Because none of Norgaard's arguments has merit, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Nossaman Files a Lien Against Waworuntu's Interest in a Fraud Action Against the Developers of a Queen Mary Project*

In 2003 Nossaman, Guthner, Knox & Elliott, LLP (now Nossaman) represented Waworuntu in a fraud action against Lee H. Durst, Queen's Seaport Development, Inc. (QSDI), Bandero LLC, Cheng Cheng USA, LLC, and others arising from Waworuntu's $12 million investment in a commercial project to develop the Queen Mary ship and the surrounding area. (See *Waworuntu v. Durst* (Super. Ct. L.A. County, 2005, No. BC303692) (the *Durst* action).) Waworuntu alleged the defendants fraudulently represented that his investment would enable Bandero and Cheng Cheng to buy the development rights to the property and that the City of Long Beach had already approved the development.

In May 2005 Norgaard substituted in for Nossaman as counsel for Waworuntu in the *Durst* action. Nossaman sued Waworuntu for unpaid legal fees Waworuntu owed Nossaman for representing him in the *Durst* action. (*Nossaman v. Waworuntu* (Super. Ct. L.A. County, 2005, No. BC337925) (the *Waworuntu* action).) On November 28, 2005 the court in the *Waworuntu*

3

action entered a $611,548 default judgment in favor of Nossaman and against Waworuntu.

On March 29, 2006 Nossaman filed in the *Durst* action a notice of lien in a pending action. (See Code Civ. Proc., § 708.410.)[1] Nossaman served the notice of lien on Waworuntu (who was incarcerated at the time at the Cipinang Prison in Indonesia), Norgaard (who was counsel of record for Waworuntu), and all the parties to the *Durst* action. In April 2006 Waworuntu moved to set aside the default judgment Nossaman had obtained against him, arguing Nossaman failed to properly serve him. The trial court denied Waworuntu's motion, as well as a subsequent request for reconsideration. Waworuntu did not appeal either ruling.

B. *Waworuntu Obtains a $12 Million Judgment in the* Durst *Action and Receives Funds from Certain* Durst *Defendants*

On September 6, 2011 the trial court in the *Durst* action entered judgment for Waworuntu in the amount of $12 million and created a constructive trust in favor of Waworuntu. The court's statement of decision in *Durst* declared: "Insofar as the court has found that Bandero, [Cheng Cheng], Durst, and [another defendant] acquired Waworuntu's $12 million by fraud, Waworuntu is entitled to a constructive trust over that payment, including any assets purchased with the proceeds of those funds." On February 11, 2013 our colleagues in Division Eight affirmed the judgment in the *Durst* action. (*Waworuntu v. Durst* (Feb. 11, 2013, B236904) [nonpub. opn.].)

---

[1] Statutory references are to the Code of Civil Procedure.

4

Meanwhile, QSDI filed for bankruptcy and its trustee asserted various claims in federal (district and bankruptcy) court against Bandero and Cheng Cheng, QSDI's co-defendants in the *Durst* action. Bandero filed a proof of claim against QSDI in the bankruptcy proceeding, and Bandero and Cheng Cheng filed counter- and cross-claims against QSDI in the federal court actions. The directors and officers of QSDI sought insurance coverage for those claims from National Union Fire Insurance Company, which agreed to settle the insureds' disputes with Bandero and Cheng Cheng. As a result of that settlement, National Union agreed to pay $550,000 to Bandero and Cheng Cheng.

On August 26, 2008 Waworuntu filed in the *Durst* action an application for a writ of attachment to the $550,000 payment National Union had agreed to pay to Bandero and Cheng Cheng. On November 12, 2008 the trial court in the *Durst* action entered a joint stipulation for temporary protective order providing that National Union would pay the settlement funds due Bandero and Cheng Cheng into the Lee Durst Trust Account and that the account would not disburse any funds "[without] further court order [illegible] to the attorney liens."[2]

Counsel for Bandero in the *Durst* action, Allen Matkins Leck Gamble Mallory & Natsis LLP, and an expert consultant

---

[2] Norgaard contends, and Nossaman does not dispute, that the joint stipulation, which was handwritten but appears to be signed by the judicial officer presiding in the *Durst* action, stated: "[F]unds deposited in the Lee Durst Trust Account will not be disbursed [without] further Court Order as regards to the attorneys liens." The reference to "attorneys liens" presumably refers to prior liens established by three law firms that represented Bandero and Cheng Cheng in various actions.

5

retained by Bandero, MBI Liquidation, Inc., also filed liens against the funds paid to Bandero as a result of the settlement in the QSDI bankruptcy. On February 20, 2009 the bankruptcy court issued an order effectively resolving the dispute over the $550,000.[3] Under that order, National Union paid approximately $154,000 of the settlement funds into an interest-bearing joint account established by Bandero, Allen Matkins, MBI Liquidation, and Waworuntu, pending resolution of the liens and disputes regarding those funds.[4] The order prohibited the release, transfer, or withdrawal of funds from the joint account "except pursuant to the joint written instructions . . . or pursuant to an order of a court with jurisdiction over the disputes between the Bandero Parties, on the one hand, and Allen Matkins, MBI and Waworuntu, on the other hand." National Union paid the remainder of the settlement funds into a trust account established by Durst pending the resolution of liens and attachments asserted by Waworuntu and others. The order also prohibited the release of those funds "except pursuant to the joint written instructions of [certain parties, including Bandero and Cheng Cheng] and Waworuntu or pursuant to an order of a court with jurisdiction over the disputes between such parties."

In May 2013 Waworuntu filed a complaint against MBI Liquidation and Allen Matkins, alleging causes of action for declaratory relief, conversion, and "enforcement of constructive trust, judgment and judgment lien" (the *MBI* action).

---

[3] This is where the $155,524.55 at issue in this appeal comes from.

[4] Waworuntu was an allowed claimant in QSDI's bankruptcy proceeding.

6

Waworuntu alleged MBI Liquidation and Allen Matkins refused to agree to disburse to him the $154,000 in settlement funds paid into the joint account. Waworuntu alleged the judgment in the *Durst* action made him "entitled to immediate and unconditional receipt of all funds held in the Joint Account." Waworuntu also alleged that about $2.5 million of his $12 million investment in the Queen Mary project was placed "directly into a trust account for the direct benefit of, use by and transfer to Allen Matkins, for fees and expenses to be incurred by Allen Matkins on behalf of Bandero, [Cheng Cheng], Lee Durst and [another co-defendant] in defense of [the *Durst* action]" and more generally that some of his investment funds were diverted to pay Allen Matkins' fees and expenses "incurred on behalf of Bandero and [Cheng Cheng] in the [QSDI] bankruptcy case." Waworuntu alleged that, as a result, the $154,000 in joint account funds were "'assets purchased with the proceeds of [Waworuntu's] funds,' in the words of [the *Durst* court's] Statement of Decision" and that he was entitled to judgment against Allen Matkins and MBI Liquidation for the full amount of the joint account.

On July 8, 2013 the parties to the *MBI* action entered into a stipulation under which the full amount of the joint account would be disbursed to Waworuntu ("or to his counsel's trust account"), and MBI Liquidation and Allen Matkins waived and released any claims they had over those funds. The record in this appeal does not reveal the details of how the parties resolved the *MBI* action, but Norgaard ultimately received and deposited into his client trust account on July 12, 2013 a payment of $155,524.55. Norgaard transferred the funds into his general account three days later.

C.    *Nossaman Files a Notice of Levy Against Norgaard, Renews the Judgment in the* Waworuntu *Action, and Files the Complaint in this Action*

On October 7, 2013 Nossaman served a document titled Notice of Levy under Writ of Execution (Money Judgment) on Norgaard in connection with the *Waworuntu* action.  The notice identified Waworuntu as the judgment debtor and described the property levied on as:  "Any and all monies due [Waworuntu] from [Norgaard], and any and all personal property (including, but not limited to, funds received in connection with [the QSDI bankruptcy] and/or [the *MBI* action]) of [Waworuntu] and/or held on [Waworuntu's] behalf (regardless of how such funds are held, including but not limited to, in a client trust account) by [Norgaard]."  The notice identified Norgaard as a "Third Person in Possession of Funds."  Nossaman personally served the Notice of Levy under Writ of Execution on Norgaard on October 7, 2013 and served the notice on Waworuntu by mail.

On November 22, 2013 Nossaman obtained in the *Durst* action a writ of execution to enforce its judgment against Waworuntu.  (See § 699.510, subd. (a).)  The court in the *Durst* action modified the original judgment effective December 5, 2013 to reflect the "execution lien in favor of Nossaman . . . against [Waworuntu's] interest in the instant Judgment."

In 2014 Nossaman moved to renew its judgment against Waworuntu in the *Waworuntu* action and served the motion on Waworuntu in prison and on Norgaard as counsel for Waworuntu.  The trial court granted Nossaman's motion and denied Waworuntu's motion to vacate the renewal of the judgment, and our colleagues in Division Eight again affirmed

8

the judgment.  (*Nossaman, Guthner, Knox & Elliott v. Waworuntu* (Sept. 29, 2016, B265486) [nonpub. opn.].)

On January 30, 2014 Nossaman filed an action against Norgaard for declaratory and injunctive relief.  On September 27, 2016 Nossaman filed another action, which the trial court related to the prior action, for failure to honor the notice of levy, alleging Norgaard, "while representing Waworuntu, received certain Settlement Funds (in a sum believed to be $153,890.84) in connection with Waworuntu's Judgment [in the *Durst* action]." Nossaman further alleged Norgaard failed to honor the October 7, 2013 levy and instead attempted to apply the funds received by Norgaard on behalf of Waworuntu to Norgaard's legal fees.  Nossaman sought $153,890.84 in damages, interest from October 7, 2013, attorneys' fees, and costs.

> D.  *The Trial Court Enters Judgment for Nossaman, and Norgaard Appeals*

Following a court trial, the trial court entered judgment for Nossaman.  In its statement of decision the court found that the notice of levy served on Norgaard on October 7, 2013 related back to the lien Nossaman filed and served on Waworuntu on March 29, 2006, that the settlement funds received by Norgaard belonged to Waworuntu and were subject to Nossaman's lien, that Norgaard had no valid lien on the settlement funds, and that therefore Nossaman was entitled to judgment.  After the court denied Norgaard's motion to vacate the judgment and entered an amended judgment, Norgaard timely appealed.  On December 10, 2019 the trial court filed a settled statement in lieu of a reporter's transcript.  (See Cal. Rules of Court, rule 8.137(a).)

9

# DISCUSSION

Norgaard contends the trial court erred in entering judgment for Nossaman because the March 29, 2006 lien was not effective for a variety of reasons, the execution lien created by the October 7, 2013 notice did not relate back to the March 29, 2006 lien, Norgaard did not possess or ever receive any funds described by the October 7, 2013 notice of levy, and even if Norgaard possessed funds described by the October 7, 2013 notice of levy, he received those funds pursuant to the terms of Nossaman's lien and an order issued in the *Durst* action.

### A.    *Standard of Review*

In reviewing a judgment based on a statement of decision following a court trial, we review questions of law de novo, including the application of a statute to a set of undisputed facts. (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162; *Grayson Services, Inc. v. Wells Fargo Bank* (2011) 199 Cal.App.4th 563, 570.) "We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings. (*Ribakoff*, at p. 162; accord *Keading v. Keading* (2021) 60 Cal.App.5th 1115, 1125; *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581-582.) ""'[U]nder the doctrine of implied findings, the reviewing court must infer, following a bench trial, that the trial court impliedly made every factual finding necessary to support its decision.""" (*Ribakoff*, at p. 162; see

*Schmidt*, at p. 582; *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

B.     *The Enforcement of Judgments Law*

The Enforcement of Judgments Law (§ 680.010 et seq.) "is a comprehensive statutory scheme for the enforcement of civil judgments in California." (*Grayson Services, Inc. v. Wells Fargo Bank*, *supra*, 199 Cal.App.4th at p. 569; see *SBAM Partners, LLC v. Wang* (2008) 164 Cal.App.4th 903, 909.)  Section 708.410 "allows a party who has a money judgment against another to obtain a lien on that person's right to money in a later lawsuit. In particular, it allows a 'judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action' to obtain a lien on '[t]he rights of such judgment debtor to money or property under any judgment subsequently procured in the action.'" (*Gilman v. Dalby* (2021) 61 Cal.App.5th 923, 926; see *Oldham v. California Capital Fund, Inc.* (2003) 109 Cal.App.4th 421, 430 [section 708.410 authorizes a judgment creditor to obtain a lien on a pending action "to establish and preserve the judgment creditor's priority to the money and property the judgment debtor may receive from the pending action"].)  "The judgment creditor may assert this lien when the judgment debtor sues for money or property, or where the action or proceeding establishes that the judgment debtor has an interest in money or property . . . ." (Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2020 supp.) ¶ 6:1476.)[5]

_____

[5]     Section 708.410, subdivision (a), provides:  "A judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action or special proceeding may

11

A judgment creditor creates a lien under section 708.410 by filing "a notice of lien and an abstract or certified copy of the judgment creditor's money judgment in the pending action or special proceeding." (§ 708.410, subd. (b).) The judgment creditor must also serve on all parties in the action or special proceeding a copy of the notice of lien and a statement of the date when the notice of lien was filed in the action or special proceeding, although "[f]ailure to serve all parties as required . . . does not affect the lien created by the filing under subdivision (b), but the rights of a party are not affected by the lien until the party has notice of the lien." (§ 708.410, subd. (c).)

If a third person has possession or control of the judgment debtor's property that is subject to a lien, the judgment creditor can create a lien enforceable against the third person by serving a copy of the writ of execution and a notice of levy on the third person. (§ 701.010, subd. (a); see *Grayson Services, Inc. v. Wells Fargo Bank*, *supra*, 199 Cal.App.4th at pp. 565-566 [judgment creditor can create a lien against the judgment debtor's deposits at a third party bank under section 701.010].) If the third person is required to make payments to the levying officer and fails or refuses without good cause to do so, the third person is liable to the judgment creditor. (§ 701.020, subd. (a).)

---

obtain a lien under this article, to the extent required to satisfy the judgment creditor's money judgment, on both of the following: [¶] (1) Any cause of action of such judgment debtor for money or property that is the subject of the action or proceeding. [¶] (2) The rights of such judgment debtor to money or property under any judgment subsequently procured in the action or proceeding."

C.    *Nossaman Established and Provided Notice of the*
      *March 29, 2006 Lien*

Norgaard presents a variety of reasons why the March 29, 2006 lien on Waworuntu's interest in the *Durst* action was ineffective.  The trial court correctly rejected them all.  First, Norgaard argues Nossaman did not serve the March 29, 2006 notice of lien in accordance with the May 10, 2005 order granting Nossaman's motion to be relieved as counsel for Waworuntu.  That order stated:  "If the client's current address is known, service on the client must hereafter be made at that address unless otherwise ordered in item 13," which in turn stated that service on Waworuntu "shall also be made on [his] agent, Helen Wong . . . ."  The order also identified Waworuntu's current address as a building in Jakarta, Indonesia.  Nossaman served the March 29, 2006 notice of lien on Waworuntu at the address where Waworuntu was incarcerated and on Norgaard, who was then counsel of record for Waworuntu in the *Durst* action.  Nossaman did not serve the notice on Waworuntu at his Jakarta address or on his agent.

The trial court properly ruled service of the notice of lien on Waworuntu was valid because Norgaard was counsel of record for Waworuntu at the time the notice was served.  Section 708.410, subdivision (c), requires only that judgment creditor serve the notice of lien on all parties to the action in which the judgment creditor files the lien in a pending action.  And California Rules of Court, rule 1.21(a) provides that, if a party is represented, service is effected by serving the party's attorney.  The order granting Nossaman's motion to be relieved as counsel for Waworuntu left Waworuntu temporarily unrepresented; for this reason, the order specified a location to serve Waworuntu, at least until he

13

obtained new counsel.  That order did not make service of any future filings on counsel for Waworuntu ineffective.  Indeed, once Waworuntu retained Norgaard as his new attorney of record, Nossaman could no longer serve or communicate directly with Waworuntu and properly served Norgaard.  (See Cal. Rules of Prof. Conduct, rule 4.2 (former rule 2-100).)

Moreover, as stated, section 708.410, subdivision (c), provides that "[f]ailure to serve all parties as required . . . does not affect the lien . . ., but the rights of a party are not affected by the lien until the party has notice of the lien."  It is undisputed that Waworuntu had notice of the lien by March 29, 2006 (or within five days of March 29, 2006), when Norgaard was served with the notice by mail.  (See *Gilman v. Dalby*, *supra*, 61 Cal.App.5th at p. 938 ["[p]arties . . . may generally satisfy notice requirements by serving notice on the opposing party's counsel"]; *Roche v. Hyde* (2020) 51 Cal.App.5th 757, 797-798 [an attorney's knowledge is imputed to the client under agency principles].)

Second, Norgaard argues Nossaman did not take steps to "establish, execute on or enforce" the March 29, 2006 lien until Nossaman obtained an execution lien on December 5, 2013 and commenced this action on January 30, 2014.  But despite ticking through a long list of things Nossaman could have done to enforce its lien, Norgaard does not identify anything the Enforcement of Judgments Law required Nossaman to do that it did not do.  For example, Norgaard contends Nossaman's lien must be "enforced in an action to establish its priority over other liens," but cites no statute requiring any such action.[6]  Norgaard identifies a number

---

[6]     Norgaard cites section 708.460, subdivision (a), but that provision states:  "If a lien is created pursuant to this article, the

14

of other provisions of the Enforcement of Judgments Law, all of which describe various ways Nossaman might have chosen to enforce its lien, but none of which required Nossaman to proceed in that manner.  (See Ahart, Cal. Practice Guide: Enforcing Judgments and Debts, *supra*, ¶ 6:147 ["[t]he proper method of enforcing a judgment depends upon a number of factors—e.g., type of asset involved; judgment amount vs. enforcement cost; and likelihood the debtor may file for bankruptcy," and "there are pros and cons to using any enforcement procedure"].)

Finally, Norgaard argues that, because there was no valid writ of execution for the October 29, 2006 lien, the lien did not exist.  But as Norgaard observes, a lien in a pending action is not subject to execution.  (See § 699.720, subd. (a).)  Instead, the judgment creditor creates a lien in a pending action by filing a notice of lien and an abstract or certified copy of the judgment creditor's money judgment in the pending action.  (See § 708.410, subd. (b); *In re Marriage of Kerr* (1986) 185 Cal.App.3d 130, 133.) Only after final judgment in the *Durst* action could Nossaman file a writ of execution to execute on Waworuntu's interest in the judgment.  Nossaman did that on October 7, 2013 and served Norgaard with that writ of execution.

------

court clerk shall endorse upon the judgment recovered in the action or special proceeding a statement of the existence of the lien and the time it was created."  Not only does that provision not prescribe any action on the part of the judgment creditor, but the clerk of the court in the *Durst* action appears to have complied with section 708.460 by endorsing on the judgment in that case the execution lien created on December 5, 2013.  And the lien on the money judgment created on December 5, 2013 related back to the March 29, 2006 lien.  (See § 697.020.)

D. *The Execution Lien Created on October 7, 2013 Related Back to the March 29, 2006 Lien in a Pending Action*

Norgaard argues the trial court erred in ruling the execution lien created by the October 7, 2013 notice to Norgaard related back to the March 29, 2006 lien. Section 697.020, subdivision (b), provides: "If a lien is created on property pursuant to this division and a later lien of the same or a different type is created pursuant to this division on the same property under the same judgment while the earlier lien is in effect, the priority of the later lien relates back to the date the earlier lien was created." In concluding that the October 7, 2013 execution lien related back to the March 29, 2006 lien in a pending action, the trial court necessarily found that the October 7, 2013 execution lien and the March 29, 2006 lien were created "on the same property under the same judgment" (see *Ribakoff v. City of Long Beach*, *supra*, 27 Cal.App.5th at p. 162), and Norgaard does not argue the March 29, 2006 lien was not "in effect" on October 7, 2013.[7]

Substantial evidence supported the trial court's finding. Norgaard argues that the March 29, 2006 lien covered "Waworuntu's causes of action in [the *Durst* action] and his rights to money or property under any judgment subsequently procured in that action" and that the October 7, 2013 lien covered "funds previously received and disbursed by Norgaard from the *MBI* action and the [QSDI bankruptcy]." These are the same property. The only reason Waworuntu had any claim to the

_____

[7]    Norgaard argues the March 29, 2006 lien never existed, but assuming its existence, Norgaard does not contend the lien was not in effect on October 7, 2013.

16

funds received by Norgaard in connection with the *MBI* action and QSDI bankruptcy was because of the *Durst* action.

Indeed, as counsel for Waworuntu, Norgaard represented to three courts that Waworuntu was entitled to the *MBI* action/ QSDI bankruptcy settlement funds precisely because Waworuntu prevailed against Bandero and Cheng Cheng in the *Durst* action. First, on August 26, 2008 Waworuntu filed in the *Durst* action an application for a right to attach order and writ of attachment seeking to attach the settlement payment to Bandero and Cheng Cheng from National Union. Waworuntu argued he was entitled to the $550,000 payment because Waworuntu was "certain to prevail on his claims" in that action and "the $550,000 Settlement Payment will vanish, just like the $12,000,000 before it," if the court in the *Durst* action did not grant his application.

Second, on December 24, 2008 Waworuntu filed in the QSDI bankruptcy proceeding a motion contesting the bankruptcy court's jurisdiction over the settlement payment, which Waworuntu argued was not an asset of the QSDI estate. Waworuntu argued to the bankruptcy court that the court in the *Durst* action had jurisdiction over the settlement payment as a result of the temporary protective order entered in the *Durst* action.

Finally, in his May 2013 complaint in the *MBI* action, Waworuntu alleged the judgment in the *Durst* action made him "entitled to immediate and unconditional receipt of all [settlement] funds held in the Joint Account." Waworuntu asserted he was therefore entitled to the funds ultimately disbursed to Norgaard's client trust because those funds were "money or property" procured under the judgment in the *Durst* action. The trial court did not err in ruling that the execution

17

lien of October 7, 2013 related back to the lien on a pending action of March 29, 2006.

E.   *Norgaard Received Funds Subject to the October 7, 2013 Notice of Levy*

Norgaard challenges the trial court's finding that the "settlement funds received by [Norgaard] belonged to Waworuntu and were subject to [Nossaman's] lien."  Norgaard argues he "did not ever receive or hold any funds due to Waworuntu by him, or property of Waworuntu or held on his behalf."  Substantial evidence supports the trial court's finding to the contrary.

The March 29, 2006 lien attached to Waworuntu's "rights to money or property under any judgment" procured in the *Durst* action.  Waworuntu obtained the $155,524.55 payment as a result of that action, which Norgaard received on behalf of Waworuntu into Norgaard's client trust account.  Even without notice of the October 7, 2013 lien against Norgaard, the funds Norgaard received were subject to the March 29, 2006 lien.  That Norgaard quickly transferred the funds to a general account did not transform the funds into Norgaard's money or otherwise affect Nossaman's ability to enforce the March 29, 2006 lien.  (See § 708.470, subd. (c) [a third party having notice of a lien on a pending action is liable to the judgment creditor for the value of the lien where the third party transfers property subject to the lien or paid an amount to the judgment debtor that was subject to the lien]; *In re Marriage of Katz* (1991) 234 Cal.App.3d 1711, 1720 [section 708.470, subdivision (c), "allows a judgment creditor . . . to obtain a judgment against a person . . . who has transferred assets subject to a lien created pursuant to section 708.410 to a judgment debtor"]; see, e.g., *Pangborn Plumbing*

*Corp. v. Carruthers & Skiffington* (2002) 97 Cal.App.4th 1039, 1056-1057 [an accounting firm that received settlement funds on behalf of its client, the judgment debtor, was liable to the judgment creditor, where the firm knew the funds were subject to a lien on a pending action].)

Norgaard does not dispute that the $155,524.55 he received on July 12, 2013 originated from the National Union settlement payment in the QSDI bankruptcy proceeding. He contends, however, that "all parties . . . agreed that such funds were to be paid to Norgaard and in fact were paid to Norgaard." Norgaard cites a stipulation for the release of funds filed in the *MBI* action, but that stipulation provided that the payment "shall be distributed to Waworuntu, or to his counsel's trust account, as may be designated by Waworuntu . . . ." Norgaard also cites a variety of trial exhibits, none of which indicates anyone other than Norgaard agreed that the funds received from the settlement payment somehow belonged to Norgaard.[8] And counsel for Nossaman, who testified at the trial, "emphatically denied" Nossaman ever agreed or consented to the payment of the settlement funds to Norgaard. (See *Ribakoff v. City of Long Beach*, *supra*, 27 Cal.App.5th at p. 162 ["'A single witness's testimony may constitute substantial evidence to support a finding.'"]; see also *Schmidt v. Superior Court*, *supra*, 44 Cal.App.5th at p. 582.)

Norgaard also argues the funds he received as a result of the *MBI* action were "obtained" from defendants who were not

---

[8]    Certain exhibits Norgaard cites are his handwritten notes, which the trial court admitted into evidence only for the "limited purpose of evidence that [Norgaard] made notes, but not for the truth thereof."

19

parties to the *Durst* action (i.e, counsel for Bandero and Cheng Cheng, who had outstanding attorneys' liens).  But the funds still originated from the National Union settlement payment to Bandero and Cheng Cheng.  That other attorneys may have had and then relinquished claims to the settlement funds did not affect Waworuntu's entitlement to or ownership of the funds.

F.   *Norgaard's Receipt of Funds Pursuant to Various Orders and Stipulations Did Not Invalidate Nossaman's Lien*

Norgaard contends the March 29, 2006 lien in a pending action was "inapplicable" to the funds he received on behalf of Waworuntu through the *MBI* action because those funds were disbursed pursuant to various court orders and stipulations in the *Durst* action, the QSDI bankruptcy, and the *MBI* action.  Neither the law nor the facts support Norgaard's arguments.

Norgaard cites the language of the court's statement of decision in the *Durst* action, which created the constructive trust over the $12 million judgment and "any assets purchased with the proceeds of those funds."  Norgaard argues the funds he received were "'assets purchased' . . . because any rights of Bandero and [Cheng Cheng] in the Queen Mary project were purchased with the funds of which Waworuntu had been defrauded, and because the funds invested by Waworuntu financed the Bandero and [Cheng Cheng] litigation against third parties that resulted in the QSDI case settlement."  Even if the (nonexistent) development rights in the Queen Mary and legal fees incurred by Bandero and Cheng Cheng constituted "assets purchased with the proceeds" of Waworuntu's $12 million investment (which is doubtful), the creation of the constructive

20

trust did not affect the scope or enforceability of Nossaman's lien on Waworuntu's "rights to money or property under any judgment procured in [the *Durst*] action." Moreover, Norgaard's argument implies that, contrary to the argument he has made in this action, the funds Norgaard received indeed belonged to Waworuntu.[9]

Norgaard bases his next argument on the language of the March 29, 2006 notice of lien. As required by section 708.420, the notice stated: "No compromise, dismissal, settlement, or satisfaction of this action or proceeding or any of the rights of the [judgment debtor] to money or property under any judgment procured in this action or proceeding may be entered into by or on behalf of [the judgment debtor], and that person may not enforce any rights to money or property under any judgment procured in this action or proceeding by a writ or otherwise, unless one of the following requirements is satisfied: [¶] a. *the prior approval by order of the court in this action or proceeding has been obtained*; [¶] b. the written consent of the [judgment creditor] has been obtained or that person has released the lien; or [¶] c. the money judgment of the [judgment creditor] has been satisfied." (Italics added.) According to Norgaard, an order of the court in the *Durst* action and orders and stipulations in the QSDI bankruptcy

---

[9]    Norgaard also contends Nossaman could not enforce the 2006 lien in a pending action against funds received into the constructive trust created in the *Durst* action because the execution lien on the money judgment in the *Durst* action was not created for another four years. But Nossaman timely obtained a lien on the money judgment in the *Durst* action after that judgment became final in 2013, and as stated, that lien related back to the March 29, 2006 lien. (See § 697.020.)

proceeding and the *MBI* action provided "prior approval" as required in the notice of lien to release the funds to Norgaard.

The language in the notice required by section 708.420, however, concerns the compromise, dismissal, settlement, or satisfaction of the action in which the lien on a pending action was filed, and the *Durst* action was not compromised or settled. Section 708.420 reflects the addition of section 708.440 to the Enforcement of Judgments Law, which provides that "no compromise, dismissal, settlement, or satisfaction of the pending action or special proceeding or the judgment procured therein may be entered into by or on behalf of the judgment debtor, without the written consent of the judgment creditor or authorization by order of the court . . . ." (§ 708.440, subd. (a).) The Legislature added this provision "to prevent, for example, the judgment creditor from forcing the judgment debtor to proceed with the action when the court concludes that it is in the best interests of the parties to settle." (16 Cal. Law Revision Com. com. (1982) p. 1521.) Neither section 708.440 nor the language required by section 708.420 applies to settlements of *other* actions involving the judgment debtor or the judgment debtor's rights to money or property in those actions.

And even if the language in the notice of lien were somehow relevant to the circumstances in this case, the various orders Norgaard cobbles together do not do what he claims they do. Norgaard begins with the November 2008 joint stipulation entered in the *Durst* action, which prevented the disbursement of settlement funds paid into the Lee Durst Trust Account without "further court order." He then points to the February 2009 order in the QSDI bankruptcy proceeding, which required National Union to deposit $154,000 of the settlement funds into a joint

22

account established by Bandero, Allen Matkins, MBI Liquidation, and Waworuntu and the remainder into the Lee Durst Trust Account. Finally, Norgaard cites the July 2013 stipulation in the *MBI* action, which required the funds in the joint account, not the funds in the Lee Durst Trust Account, to be paid to Waworuntu. Together Norgaard argues this trifecta of orders and stipulations created the "prior approval" of the court in the *Durst* action to disburse funds to Norgaard. But the funds Norgaard eventually received on behalf of Waworuntu did not pass through the Lee Durst Trust Account referenced in the November 2008 joint stipulation in the *Durst* action. And even if the court in the *Durst* action approved the payment of funds to Waworuntu, through a trust or otherwise, that approval would not have affected Nossaman's lien on Waworuntu's rights to money or property received under the judgment in that action.[10]

---

[10] Because we rely only on evidence admitted at trial as described in the settled statement, the parties' various objections to each other's appendices are moot.

## DISPOSITION

The judgment is affirmed.  Nossaman is to recover its costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.